## Case No. 4,394.
ELLIOTT v. NICHOLLS.

## Case No. 4,395.
ELLIOTT et al. v. PEIRSOLL et al.
[1 McLean, 11.][1]
Circuit Court, D. Kentucky.  May Term, 1829.[2]

Mr. Wickliffe, for complainants.
Mr. Haggin, for defendants.

OPINION OF THE COURT. In their bill the complainants represent themselves to be the heirs of Sarah E. Elliott, deceased; who during her coverture was induced by her husband, James Elliott, in the year 1813, to execute a deed for a valuable estate which

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Affirmed in 6 Pet. (31 U. S.) 95. The opinion of the supreme court is cited in Boudereau v. Montgomery, Case No. 1,694; Thompkins v. Thompkins, Id. 14,091; Daviess v. Fairbairn, 3 How. (44 U. S.) 648; Lane v. Dolick, Case No. 8,049; Thompson v. Tolmie, 2 Pet. (27 U. S.) 168; Voorhees v. Jackson, 10 Pet. (35 U. S.) 478; Wilcox v. McConnel, 13 Pet. (38 U. S.) 511; Decatur v. Paulding, 14 Pet. (39 U. S.) 600; Lessee of Grignon v. Astor, 2 How. (43 U. S.) 343; Lessee of Hickey v. Stewart, 3 How. (44 U. S.) 762; Burnham v. Webster, Case No. 2,178; Bank of U. S. v. Moss, 6 How. (47 U. S.) 38; Williamson v. Berry, 8 How. (49 U. S.) 541; U. S. v. Stowell, Case No. 16,-409; Beauregard v. New Orleans, 18 How. (59 U. S.) 503; Bell v. Ohio Life & Trust Co., Case No. 1,260; Derby v. Jacques. Id. 3,817; Cook v. Burnley, 11 Wall. (78 U. S.) 669; Amory v. Amory, Case No. 334; Otis v. The Rio Grande. Id. 10,613; Thompson v. Whitman, 18 Wall. (85 U. S.) 467.]

was vested in her, to one Benjamin Elliott; who immediately reconveyed the land to her husband. That the said Sarah supposed she only conveyed a life estate. The deed was recorded without any privy examination of the said Sarah, as the law requires. After her decease, the complainants brought an ejectment for the land, and during the pendency of this suit, the county court of Woodford were prevailed on to make the following order on the motion of Benjamin Elliott: "Woodford County, ss. November County Court, 1823. On motion of Benjamin Elliott, by his attorney, and its appearing to the satisfaction of the court, by the endorsement on the deed from James Elliott and wife to him, under date of the 12th of June, 1813; and by parol proof that the said deed was acknowledged in due form of law, by Sarah Elliott, before the clerk of this court on the 11th day of September, 1813, and that the certificate thereof was defectively made out, it is ordered that the said certificate be amended to conform to the provisions of the law in such cases, and that said deed and certificate as amended be again recorded." Whereupon the said certificate was directed to be amended to read in the words and figures following, to wit: "Woodford County, sct. September 11th, 1813. This day the within named James Elliott and Sarah his wife, came before me, the clerk of the court for the county aforesaid and acknowledged the within indenture to be their act and deed; and the said Sarah being first examined privily and apart from her said husband, did declare that she freely and willingly sealed and delivered said writing, which was then shown and explained to her by me, and wished not to retract it, but consented that it should be recorded. The said deed, order of court and certificate as directed to be amended, are all duly recorded in my office. John McKinney, Jr., C. W. C. C."

At November term 1823, the plaintiffs in the ejectment obtained a judgment in their favor. During this term the bill was filed to stay waste, &c., and to have the above deed delivered up to be cancelled. A writ of error was prosecuted on the above judgment, and judgment was affirmed. 1 Pet. [26 U. S.] 328. In that case the court held that the acknowledgment of Sarah E. Elliott, was not in pursuance of the statute and that it did not divest her right. The defendants filed their answers, and insisted on the sufficiency of the acknowledgment. The other question being settled by the judgment in the ejectment, the surrender of the deed is the only point made by the bill which it becomes necessary to consider.

The complainants insist that they have a right to demand the surrender of this deed, as it casts a shade upon their title and may subject them to future litigation and expense. And it is insisted that to give relief under such circumstances, is the province of a court of equity. There would be much force in this argument, if the deed in question were not void upon its face. It has been solemnly adjudged by the supreme court to be void. The deed is therefore of no validity, and can be used in no form to sustain, against the complainants as the heirs of Sarah E. Elliott, any color of right either legal or equitable. If the deed were not void upon its face, but could be shown to be inoperative and void by matters extrinsic, there would seem to be much reason in ordering it to be cancelled, and it might subject a party to litigation and, perhaps, to some uncertainty in proving it to be void. The proof might not always be at the command of the party, or in its nature it might be perishable. There are contradictory decisions in the English authorities on this point. 3 Brown, Ch. 15, 18; 3 Ves. 368; 5 Ves. 286; 7 Ves. 3. And Chancellor Kent, 1 Johns. Ch. 517, inclines to think that "the weight of authority and the reason of the thing, are equally in favor of the jurisdiction of the court, whether the instrument is or is not void at law; and whether it be void from matter appearing on its face or from proof taken in the cause; and that these assumed distinctions are not well founded."

We have not enumerated the conflicting decisions on this subject to ascertain on which side the majority is found; but we differ with Chancellor Kent, who thinks, in reason, these assumed distinctions between instruments void upon their face, or for matters wholly extrinsic, are not well founded. We think there is a clear distinction between the two instruments, both as it regards the parties in interest and the public, sustained by reason; and that an equitable jurisdiction may well be exercised in the one case and not in the other. The deed void upon its face, however it may be attempted to be used, carries its own condemnation. No want of notice can enable the grantee to convey a good title. But this is not the case where a deed may have been fraudulently obtained, and is consequently voidable. The grantee, in some cases may convey a good title to a bona fide purchaser without notice. And is not this a clear distinction between the two instruments, both as it regards the parties to the deed and the public?

To prevent the perpetration of frauds as far as possible, is as much the object of every well regulated government as to relieve against them. And here is a case where the fraudulent holder of a deed may convey a valid title to an innocent purchaser. The instrument then which may enable him to practice this fraud, should be surrendered to be cancelled; and a court of equity cannot well be called to exercise its peculiar jurisdiction in a case more appropriate. And even where the holder of an instrument which is void, though not void upon its face, may not convey a valid title to a bona fide

purchaser; still, the instrument being fair and valid upon its face, it may enable the holder to shift the effects of the fraud from the maker of the instrument, to the assignee or grantee. But whether the one or the other of these parties be likely to become the victims of the fraud, it is equally the duty of a court of equity to direct the instrument to be cancelled. The exercise of this jurisdiction may well be placed on the ground, in addition to the above consideration, that such an instrument may lead to expensive litigation, and casts suspicion upon a good title. But a deed void upon its face, is no more than a blank piece of paper. It may, by possibility, become an instrument of mischief, and so may a white sheet of paper. And to any one who investigates and comprehends his own transactions, the blank paper is more likely to deceive and defraud him, by being converted into a forged instrument, than a deed which upon its face is shown to be wholly inoperative.

Is there any reason or propriety then, in calling upon a court of chancery to direct, by the exercise of its extraordinary jurisdiction, a paper so utterly void and worthless, and which cannot become an instrument of fraud to any one who uses ordinary caution, to be surrendered and cancelled? It would seem to be as reasonable to require the interposition of the court to prevent some individual, who the complainant might suppose was inclined to injure him, from doing any act to his prejudice.

THE COURT think, that as the deed is void upon its face, and has been so pronounced, by the supreme court, which it is the object of the bill to have delivered up to be cancelled, it does not give a ground for the exercise of the powers of this court; and the bill is therefore dismissed at the costs of the complainants.