O'FERRALL *v.* SIMPLOT.

$$\frac{4}{115} \quad \frac{381}{549}$$

Where the certificate of acknowledgment of a deed is defective, it cannot be shown by evidence *aliunde*, that everything required by statute, was done in fact, and that the officer, through mistake, omitted to certify a part; nor can the certificate be amended upon such evidence.

Under the act of January 4, 1840, entitled an act to regulate conveyances, it is essential to the validity of the acknowledgment of a deed by a *feme covert*, that the certificate of the officer taking it should show, that the contents of the deed were made known to the wife, and that she freely relinquished her right of dower in the premises.

The provisions of the statute which provide for a wife's relinquishment of dower, are a substitute for the fine and common recovery at common law, and must be substantially complied with.

Section 1230 of the Code, and the statute of Jan. 4, 1840, which provide that neither the certificate of acknowledgment of a conveyance, nor the record, nor transcript thereof, is conclusive evidence of the facts therein stated, were intended to provide for cases of fraud in obtaining the acknowledgment, or where the certificate is alleged to be false, and do not authorize an amendment of such a certificate, so as to supply defects therein.

The common law is in force in the state of Iowa.

The ordinance of 1787, for the government of the Northwest Territory, made the common law the law of that territory; that ordinance was extended over Wisconsin, and then over Iowa; and although the laws of Wisconsin and Michigan were repealed by the legislature of Iowa, in 1840, the ordinance of 1787 was *not* affected by that repeal, but remained in full force.

The ordinance of 1787, with subsequent acts, made the law of dower one of the fundamental laws of the territory of Iowa.

Where the husband alone conveys real estate, the dower of the wife, upon his death, is to be governed by the law in force at the time of making the conveyance by the husband, and not by that in force at the time of his decease.

The sixth section of the act of July 30, 1840, which provides that none of the statutes of Great Britain shall be considered as law of the territory of Iowa, does not extend to the statutes of *England*, and was intended to prescribe the event of the union of the crown of England with that of Scotland, as the period at which the statutes of England should cease to operate upon our law.

O'Ferrall v. Simplot.

The statute of Merton, (20 Henry. III, A. D. 1236,) which gave a doweress damages for the detention of her dower, was not deprived of any effect by section six of the act of July 30, 1840.

Under the act entitled "An act to allow and regulate the action of right," approved December 29, 1838, and under chapter 116 of the Code, damages are recoverable in an action for dower.

A doweress is entitled to recover damages for the detention of her dower, from the alienee of her husband, or his grantee, as measured by the use and profits at least, from the time of a demand of dower, provided the demand was not more than six years prior to the commencement of the suit. If the demand was more than six years before the action was commenced, she can only recover for the six years.

Where a doweress is entitled to dower in different tracts of land, the courts possess no power to order dower in all the tracts, to be assigned out of one or more parcels, without the consent of the doweress.

*Appeal from the Dubuque District Court.*

This was a bill brought to recover dower in lot sixty six in the town of Dubuque, Iowa. From the answer, it' appears that Francis K. O'Ferrall, husband of complainant, being seized, conveyed the above lot by a deed of conveyance, in which she as his wife, joined. The certificate of acknowledgment is, in its form, as follows :—" This day before me, &c., appeared F. K. O'Ferrall and Jane B. O'Ferrall, his wife, both of whom are personally known to me to be the identical persons whose names are affixed to the foregoing instrument of writing, and acknowledged having signed the same for the purposes therein mentioned. And I further certify, that having examined the said Jane B. O'Ferrall, separately and apart from her husband, she acknowledged to me that she signed said instrument of writing of her own free will, and without any compulsion of her husband." This is dated Oct. 29, 1840, one day after the date of the deed. The act of Jan. 4, 1840, (Acts 1840, 35,) required the officer taking the acknowledgment, to certify, in addition to the above, that the contents of the deed were made known to the wife, and that she freely relinquished her right of dower in the premises. The defendant's answer alleges that, in fact, these things were done, and that the

O'Ferrall v. Simplot.

officer had omitted to certify them, through mistake; and asks that the certificate be amended according to the facts. It appears that the deceased, Francis K., conveyed not only the above lot, No. 66, but also lots No. 224, 225, and 226, (by another deed, with a precisely similar acknowledgment,) to one Harbeson, from whom by mesne conveyances they came to Michael Tiernan, who by his will, devised them all to Seth C. Tiernan and Morris Jones, the executors of his will, and who still hold the last three lots, but have conveyed No. 66 to respondent.

A suit is pending to recover complainant's dower, in the last three lots, from the executors. It is agreed on their part, that if complainant is entitled to dower in these lots, the full value of what she would be entitled to in the four lots, may be assigned to her in those numbered 224, 225, and 226, so as to save the defendant, Simplot; and defendant prays that this may be done, if she is entitled to dower. With a view to such a possible result, the District Court caused the commissioners to make various estimates, and to report upon several questions relating to the lots, both jointly and severally, so that the court might, upon further consideration, make such an assignment as should seem proper under all the circumstances, in case she should be found entitled thereto. The death of Francis K. O'Ferrall occurred in December, 1851. The plaintiff demurred to the answer, and the court sustained the demurrer, and awarded dower in lot No. 66 alone, without reference to the other lots. The defendant appeals.

*Bissell & Mills*, for the appellant.

Taking it for granted, that this court will examine this case, and adjudicate all the points properly raised, we will at once proceed to present those questions, in as succinct a manner as possible. The following questions arise, and are involved, in the decision of this case, and are submitted to the consideration of this court:—

1. Under the laws of Iowa, at the time the deed from O'Ferrall was made, was a widow entitled to dower in any

of the real estate of the husband, except such as he was seized of at the time of his death?

2. Under the laws of Iowa, would the demandant be entitled to dower, if she had not joined in the conveyance with her husband at all?

3. If the law required her to join in the deed with her husband, and acknowledge the deed in a particular manner, and the certificate does not comply with the requirements of the law, then is the certificate conclusive, or can it be amended, under the laws of Iowa?

4. The court is exercising chancery powers under the present form of action; and will it not relieve the defendant against the mistake of the magistrate and fraud of the demandant?

5. If the demandant is entitled to dower, is she entitled to damages for the detention of the same?

6. If she is entitled to dower, should she not be compelled to take the same entire out of the property of the grantee of her husband? And should not the same be set off to her out of that portion still in the hands of the said grantee, before resorting to that in the hands of a purchaser of the said grantee?

1. Under the civil law, there was nothing that bore any resemblance to the common law right of dower. 2 Blackstone Com. 129.

The territory of Iowa was a part of the territory of Louisiana. It had always, up to the time of its purchase by the United States, been subject to the civil law, and the common law of England never was in force in any part of said territory. The common law was not extended over this territory by the purchase, or by the treaty entered into in connection with the purchase. The common law has never been in force in any part of the United States, except it was carried there while subject to Great Britain, or was carried there, and established by positive statutory enactment. There was never any part of the territory of Iowa subject to Great Britain, and there had never been any statute, either of the United States, or of the said territory,

at the time this conveyance was made by O'Ferrall, extending the common law over Iowa. We therefore say, that the common·law was not in force in Iowa at the time O'Ferrall conveyed to Harbeson the lot in dispute. 1 Kent Com. 473 and 474, Note *a* and *b*.

. 2. We will next inquire what right she had in the estate of· her husband. The ordinance of 1787, organizing the great Northwest Territory, provides for the descent of estates of deceased persons, ·" that the estates both of resident and non-resident proprietors in the said territory, dying intestate, shall descend to, and be distributed among, the children, &c., saving, in all cases, to the widow of the intestate her third part of the real estate for life, and one third part of the personal estate; and this law relative to descents and dower shall remain in full force until altered by the legis-, lature of the district. Code, 489. This court will perceive that·this ordinance provides fully for the widow; that her dower is provided for only in the estate of the husband subject to distribution; that is to say, only in the real estate owned by the husband at the time of his death. In the case now before the court, the lots on which dower is sought to be charged, were conveyed by O'Ferrall in 1840, long before his death, and his grantee took the title perfect and complete, without claim, or incumbrance, of dower; and no subsequent act of the legislature can divest him of that perfect vested right. The ordinance of 1787 provides, that this law relative to descents and dower, shall remain in full force until altered by the legislature of ·the district. The only law on this subject, prior to the' conveyance by O'Ferrall, is that of 1839, (Laws of Iowa, 485; § 44,) which· provides for the descent of the estate of deceased persons and saves to, ·the widow, in all cases, her dower, according "to the course· of the common law." This is only saving out of the estate left by the husband; and the phrase, "according to the course of the common law," only relates to the quantity and extent of the dower right, not to the property subject to the dower of the widow. Any laws on the subject, passed by either the territory of· Michigan or Wisconsin, were repealed

by the legislature of Iowa. Acts of 1840, 20. This act of 1840 also provides, in section 8, that none of the statutes of Great Britain shall be considered as law in this territory. Then, we say, if the common law was not in force in this territory at the time the conveyance was made, and the laws of Michigan and Wisconsin were not in force, then the only law giving dower was that of 1839, which only gives dower in the estate left by the husband subject to distribution; and the prayer of demandant to have dower in the land alienated by the husband, must be refused. If the court sustain this view of the case, and the law on this subject, it will be unnecessary to examine the other points, as the whole case is disposed of by a judgment in accordance with the above view of the law.

As to the second point, the defendant insists, that, previous to the death of the husband, dower is an imperfect, inchoate right, not vested; and if the court should be of the opinion, that by the ordinance of 1787, and the law of 1839, the widow would be endowed in all lands of which the husband was seized during coverture, then the following questions arise:—F. K. O'Ferrall conveyed the land in dispute in 1840, and thereby divested himself of all interest in the same,—the entire title vesting in the purchaser, subject only to the imperfect dower right of the wife. The law of 1839 was repealed in 1843—page 725—without any saving clause, thereby releasing or destroying such imperfect right, and vesting the entire title, discharged of this imperfect right, in the grantee; and no subsequent act of the legislature could divest him of that right. But grant, if you please, that the law of 1843 did not divest the widow of her right of dower, then, we say, that the Code, (page 8 and 213,) by repealing all previous laws upon the subject, and changing the nature and quantity of the widow's right entirely, has completely cut off her dower right, under any previous law or right; and the enactments of the Code upon the subject could not re-invest her with any right in land, the title to which had vested in the alienee of the husband. *Norris v. Slaughter*, 1 G. Greene, 338, as to the effect of repealing

a law. *Fenelon's Petition*, 7 Barr, 173; 5 Blackford, 195; 5 Cranch, 281; 7 Johns. 505; 4 Serg. & Rawle, 401; 2 G. Greene, 94, 181; 1 Hill, 324.

As to the 3d point, we say:—That it is not necessary for the magistrate to follow the words of the statute, in his certificate of acknowledgment. A substantial compliance with the statute is all that is required. In this case, the certificate states, that the demandant acknowledged the deed for the purposes therein mentioned, and the purpose mentioned is to convey the land free from incumbrance of every kind. Is not this a substantial compliance with the statute? In deciding upon the sufficiency of this acknowledgment, the court should take into consideration the fact, that this deed was executed in the early history of the territory; that up to August, 1840, the form used was in full conformity with the law in force; and that, at the time this deed was acknowledged, the records will show that it was the universal custom for magistrates to certify in the form used in this case; and the court should recognize such custom, unless the ends of justice absolutely require a contrary decision. 15 John. 108; 16 Ohio, 607; 1 Gil. 117; 2 Cow. 552. The Code (and by the Code the demandant makes her claim) prescribes that the widow shall have dower in the lands of the husband, to which "she had not relinquished her rights." Had she not relinquished her rights in this property? The Code does not in fact give dower; but gives a fee simple title to all lands owned by the husband, by either legal or equitable title, during coverture, to which she had not relinquished her rights, and which had not been sold on execution, &c., in lieu of dower. She joined in the acknowledgment of the deed, in the customary form, and, we say, this is a perfect relinquishment of her rights, unless that relinquishment must be in the form prescribed by the law of 1840. She had joined in conveying the same, by using all the language to convey a complete title; and had also joined in the covenants of warranty, which estops her from denying the title of the purchaser under the deed, and the property is to be treated as her separate estate. The statute of

1840 does not say she shall not relinquish her right of dower in any other way than that prescribed by that law, to wit: acknowledgment of deed, executed by her with the form of certificate prescribed. In this case, by demurring, she admits that she did acknowledge the deed in due form of law, and that is all she was required to do, to bar her dower. 7 Mass. 291; 8 Ohio, 226; 2 G. Greene, 438; 5 Binney, 301; 6 Binney, 435. *May* does not mean *must,* in the statute of 1840. 5. John. Ch. 101; 15 John. 108; 5. Cow. 188; 1 Dallas, 15; 4 Comstock, 9. The demandant did all she could to effect the transfer of the title, (and admits that she did so,) and the law should be construed, if possible, to sustain titles. 16 Ohio, 611. A deed may be perfectly good and valid, as between the parties, if not acknowledged, and this deed, executed by her, may be good, as a relinquishment of her right, although the certificate does not follow the requirements of the law of 1840. 14 Mis. 166.

The 4th point is, that the certificate of acknowledgment is not conclusive, but may be amended. We admit that the authorities, or rather the *dicta* of judges, go so far as to say, that the certificate is conclusive, and that no testimony can be introduced to contradict, or add, to the certificate. But in those cases which have arisen between the parties to the acknowledgment, or where one of the parties in court was the acknowledging party, the certificate has not been considered and adjudged to be conclusive. In *Jackson* v. *Schoonmaker,* 4 John. 161, the court say, " the acknowledgment of deeds is merely for the purpose of recording them, and is not conclusive on the opposite party. The proof, or acknowledgment, is necessarily *ex parte,* and the party who is to be affected by the deed ought, at any time, to be allowed to question its validity, and the force and effect of the formal proof. To consider the certificate of the judge as conclusive on the subject, would produce manifest injustice." In *Landon* v. *Blythe,* 16 Penn. 532, the court directly decide that the certificate might be contradicted by parol proof. This decision was based upon the allegation, that fraud and imposition had been used in procuring the acknowledgment.

In this case, is it not a fraud for the demandant to claim her dower in property to which she had relinquished her rights with all the formalities of law, and to attempt to reap an advantage by the mistake of the officer taking the acknowledgment? The same principle is established by the cases of *Rafferty* v. *Fridge*, and *Moore* v. *Wilson*, 3 McLean, 230 and 384. The answer, in this case, alleges that it was the mistake of the magistrate, that the certificate was not in full compliance with the law. It is the peculiar province of the courts of equity to relieve against the mistakes of parties, or their agents. We need only refer to Story's Eq. Jurisprudence, § 1531, to establish this position.

There is no maxim more generally recognized by courts, than the one, that when the reason for a rule fails, the law fails. Under the common law, the existence of the wife was hardly recognized; she was, in fact, *civiliter mortua*. Her property became vested in the husband, (subject to some slight exceptions,) and the wife became legally a mere menial of the husband. Under those circumstances, it was very proper that the courts should lean to the widow, and, as far as in their power, give her all the protection possible. It was under those circumstances that the courts of Great Britain adopted the maxim, that there were three things to be particularly protected, to wit: life, liberty, and dower. The courts of the United States have never recognized the dower of the widow as equally sacred with life and liberty. The laws of the different states have, in nearly every instance, diminished the dower right of the widow, and enlarged the rights of the wife. Under our law, the wife is the absolute owner of her own estate, and has at least an equal, if not a superior, interest in the homestead of the husband. There is therefore no reason why the acts of the wife, should be treated any different than that of a *feme sole*, and the law of Iowa treats her as a *feme sole* in nearly every respect. It provides that she may convey her interest in real estate the same as any other person. There is, therefore, no reason why the courts should construe her rights with any greater liberality than any other person's rights,

and why her acts should not be equally binding upon her as the acts of any other person.

But we are not even compelled to resort to the general principles of law, to establish the point now under discussion, that the certificate of the magistrate is not conclusive,[1] but the same may be rebutted.   The Code, sec. 1230, provides, that neither the certificate, nor the record, nor the transcript thereof, is conclusive of the facts therein stated. The section, taken as it is, in connection with the preceding section, must be applied to all deeds recorded before the Code took effect, as well as those which were executed and recorded since.   These two provisions, (that of 1840, and the Code,) we conceive, sets the matter at rest, as to the right to contradict and establish the facts connected with the acknowledgment, by parol proof.   We do not doubt but that the proof, to authorize the courts to decide against the validity of a certificate, must be of the most direct and positive kind.   We deem this point so clear as not to require an extended argument, to establish the correctness of the position we have here taken, that the certificate of acknowledgment is not conclusive.   If the court agree with us on this point, they must reverse the judgment of the court below, and send this cause back for trial.

In the court below, the widow claimed damages for the detention of her dower from the time she made demand, and the court rendered judgment for the amount of damages assessed by the commissioner, to which the defendant excepted.   If the common law is not in force here, then, of course, the demandant has no dower, nor damages; if the common law is in force, then, we say, although the court may decide that she have dower, the court cannot give her damages for its detention.   Dower, (says Mr. Park, p. 301,) being a real action, no damages were, at the common law,

---

[1] The legislature of Iowa, in 1840, enacted, that neither the certificate nor the acknowledgment, or the proof of any such instrument in writing, nor the record, or transcript of the record of such instrument, shall be conclusive.

recoverable for its detention. No damages (says Mr. Sayer, ch. 6, 23) are recoverable either at common law, or under any statute, in an action of right for dower. The only authority, in England, for the recovery of damages for the detention of dower, was by the statute of Merton. 4 Kent Com. 65. But the widow is not entitled to damages for the detention, unless the husband died seized. In several of the states, both the common law and the statutes of Great Britain, including that of Merton, have been specially adopted by legislative enactment. This is especially the case in New York and Massachusetts, and in Missouri the common law and a large number of the statutes are specially adopted. In South Carolina and Ohio, no damages are allowed in a judgment for dower. 4 Kent's Com. 65, n. c. The legislature of Iowa, as referred to before, enacted, in 1840, that none of the statutes of Great Britain were to have any force in this territory. See Laws of Iowa, 1840, Extra Session, 21, § 8; Bright's Hus. and Wife, 210, § 243. We deem this position too plain to require argument, or a reference to further authorities to sustain it. There certainly was no law in force in Iowa, either at the time O'Ferrall conveyed the lots in dispute, or at the time of his death, giving the widow damages for the detention of dower. The common law certainly, (if in force here,) never gave her damages for the detention of dower; and the statutes of Great Britain, not being in force here, we deem it too plain to admit of argument, that she cannot recover damages; and therefore the judgment of the court below must be reversed for that error.

The attorneys on the other side may endeavor to raise the question, whether, if the widow is entitled to dower, she is not entitled to one-third of the lands, in fee simple, under the Code. We say, they did not except to the judgment of the court below, and therefore they cannot raise the question here, in this court. Further than this, we say, that the widow takes the quantity of dower in accordance with the law in force at the time of the alienation, and the legislature cannot, after the title has vested in the grantee, take that title from him, and give it to the widow, or any one else.

See 6 John. 258; *Hall* v. *James*, 10 Wend. 480. The opposite counsel say, that dower is a speculative right, subject to change, by the legislature. We grant, that, while the husband and wife both live, the legislature can change the dower right; but such law could only apply to lands owned at the time the law took effect, and could not have a retrospective effect, and apply to lands before that time alienated by the husband. The counsel refer to *Reynolds* v. *Reynolds*, 24 Wend. 193, to sustain their position. If the court will examine the case, they will see, that it proves the very reverse. In that case, the husband owned the property at the time the law was passed, and at the time he died. The court, in that case, expressly say that the statute should not have a retrospective effect, or be so construed as to take away a vested right of property, &c. Would not a decision, giving a fee simple title, take away a right vested in Simplot, by a statute passed subsequent to the time his right vested? The present bench have decided that point, in a case not yet reported, which sets the matter at rest.

One word as to the last point—that the demandant must take her entire dower out of the lots still held by M. Tiernan's estate. There is no principle better established, than that an incumbrancer must look to the property not alienated, before he can resort to that alienated, to recover the amount of his incumbrance. *Guion* v. *Knapp*, 6 Paige, 35. The counsel claim, that dower must be set out in each parcel separately; and in this very case v. Tiernan's Estate, they have procured her dower in three lots, to be set out by taking one lot entire, and part of another. M. Tiernan owned the whole four lots, subject to the incumbrance of the widow's dower. He then alienates one of the lots.; then, we say, it is well established, that she must look to the part unsold for her dower, before she can resort to the alienated lands. The three lots left are more than sufficient to satisfy her dower, and the court erred in not rendering judgment in accordance with the above position. 1 Bright Husband and Wife, 367, §§ 27, 28, 29.

On the last point, we add the following authorities:   1

Bright's Husband and Wife, 367, § 27. "If the writ directed to the sheriff command him to deliver possession of a third part of all lands and tenements, &c., and there were lands in meadow, pasture, and corn, he would act in obedience to the writ by assigning dower *in toto* out of any of these description of lands, and his return to court of having done so, would be good." Section 28 says, that "if a widow be dowable of three manors, the sheriff may assign to her one manor in lieu of dower out of all. This has been denied in an anonymous case; but Mr. Roper considers this law well established. 1 Roper Hus. and Wife, 393."

Also, see § 29, Bright's Hus. and Wife. Mr. Jacob observes: "Perhaps the authorities in favor of this mode of assigning dower would now prevail, if the manor assigned were equal in value to one third of the whole. It does not seem to be necessary in all cases, that the widow should have a third of each part of the husband's estates. Thus, if the husband be possessed of several different mines, it is not necessary that the sheriff should divide each of them, but he may assign such a number of them as may amount to one-third in value of the whole. And if one of the husband's estates had been aliened with warranty, in many cases the whole of the wife's dower was assigned out of the remaining estates, if sufficient." See, also, Bright's Hus. and Wife, 404, § 24.

*Smith, McKinlay & Poor*, for the appellee.

A point is made as to damages. The Code, § 2027, makes a demand necessary before damages can be claimed. This is only a declaration of a common law principle. In Park on Dower, 297, it is said: "So the tenant may plead that he has always been, and still is, ready to render dower; and if he plead this plea of *tout temps prist*, at the return of the summons, he may pray that the demandant may not have damages. But the demandant may reply that she requested her dower, and the tenant refused to assign it, and issue shall be taken upon that. Also, on page 303: "And even the heir himself may, as has been already noticed, save

himself from damages, if he comes in upon the summons the first day and acknowledges the action, and pleads *tout temps prist*, i. e., avers that he was at all times ready to render dower, if it had been demanded. In what cases he may plead this plea, has been already stated. If the demandant takes issue upon it, the damages will await the event of the issue. For this reason it is that Lord Coke observes : " It is necessary for the wife, after the death of her husband, as soon as she can, to demand her dower before good testimony, for otherwise, she may by her own default, lose the value after the decease of her husband, and her damages for detaining of dower. But even where the heir pleads *tout temps prist* with success, the demandant shall recover damages from the teste of the original to the execution of the writ of inquiry." We presume it will be sufficient, under this rule of law, to say that the plea of *tout temps prist* was not plead in this case ; nor is it true in fact, that the party has always been ready and willing to give the widow her dower, but, on the other hand, he has been contending precisely the contrary. If she recover at all, she must recover damages. It is alleged in the petition that a demand was made ; also the time of the demand. In *O'Ferrall* v. *Davis*, 1 Iowa, 560, a question of damages was involved in a case quite similar to this.

Another point is made in relation to allowing the magistrate to amend his certificate of acknowledgment. This was the original main point in this case. The case of *Elliott* v. *Piersol*, 1 Peters, 329 and 340, involved precisely the same question. In that case, the clerk of the court undertook to amend his certificate, after the deed had been recorded. The court held it was immaterial, whether the deed was properly acknowledged in fact or not ; that it must appear upon the record, and the record made at the time, and at no subsequent time, that the deed was properly acknowledged. It would be, as we conceive, the height of folly to allow a person who was a justice of the peace, some twenty years ago, to take a deed which had been recorded ten or fifteen years, and after he had been out of office as many years,

and make interlineations, amendments, and alterations. A justice of the peace cannot amend or alter his acknowledgment, after the deed has once been delivered and recorded. In *Purcell* v. *Goshon & Wife*, 17 Ohio, 105, a court of chancery decided that they had no power to amend the acknowledgment of a deed; much less, we say, can such amendment be made and used in a defence in a court of law.

In regard to another point made by the appellant, we make the following quotations: "A widow is not bound to take dower entire out of the whole plantation in the possession of the heirs of her deceased husband, but may recover it in parcels of the several tenants in possession." *Sip* v. *Sawback*, 2 Harr. 442. "In general, dower is to be assigned in the separate parcels of the husband's land, as against devisees or purchasers from the husband." *Coulter* v. *Holland*, 2 Harring. 330. "A widow who is entitled to dower in several different tracts of land which have been sold by her husband in his lifetime, shall not be permitted to take the whole of one tract." *Cook* v. *Fish*, Walker, 423. "In South Carolina, commissioners of dower cannot, without the consent of the creditors of the estate, set off to a widow one entire lot of land in lieu of one-third of each separate lot, or a sum of money in lieu of the same." *Scott* v. *Scott*, 1 Bay, 564.

In *Fosdick* v. *Gooding et al.*, 1 Greenl. 30, it is held that, "if the husband alien to two in severalty and die, the widow's dower is to be assigned out of each distinct parcel of land. So if he alien to one, and the grantee afterwards convey in separate parcels to several." "Common right gives the widow the third part of each separate parcel, messuage, or manor, by metes and bounds." "As a summary of the argument, so far as it has proceeded, it is apparent, that the prior right of dower supersedes any titles capable of being acquired to any portions of the land upon which it is a lien, subsequent to the conveyance of the fee by the husband of the first doweress, inasmuch as her right is of a postliminary character; and such other claims are merely in the *post*, while she comes in the *per*. Being in of the estate

of her husband, it follows that she is to be endowed of an entire third part of every separate parcel, of which he was sole seized." In 3 Bacon's Ab. 214, we find: "When the husband aliens to two in severalty, or he aliens to one, and HE *aliens* one part to another or to two in severalty, the widow's dower is to be assigned out of each parcel of land." In Park's Law of Dower, 2 55, we find: "That an assignment of one-third in value, and not in point of quantity merely, was what was contemplated by the old law, admits of no doubt; but in the simple state of property in former times it is probable that the only provision that was made for the security of the doweress, was, by requiring that the sheriff should assign to her a third part of each existing denomination of property,—thus he was bound to assign her a third part of the arable, a third part of the meadow, and a third part of the pasture."

In the case of *O'Ferrall* v. *Davis*, 1 Iowa, 560, the question as to the ordinance of 1787, and all the other questions made now, were lugged into the case and insisted upon, as strongly as in this. It is perhaps sufficient to say, that no part of the ordinance of 1787 was ever in force on the west side of the Mississippi, except the articles of compact contained in the latter part of the ordinance. See Organic Law of Wisconsin, Code, 522, § 12.

WOODWARD, J.—The first question arises in the acknowledgment, as certified on the deed of Francis K. to Harbeson, and the question is, whether it may be shown by evidence *aliunde*, that everything required by statute was, in fact, done, although the magistrate has, through mistake, omitted to certify a part; and whether the certificate may not be amended upon such evidence. As a question standing upon authority, this is clearly settled by the following cases: *Elliot* v. *Piersol*, 1 McLean, 11; *S. C.*, 1 Pet. 328, 338; *Jourdan* v. *Jourdan*, 9 S. & R. 268; *Watson's Lessee* v. *Baily*, 1 Binn. 470; *Barnet* v. *Barnet*, 15 S. & R. 73; *Jamison* v. *Jamison*, 3 Whart. 457; *Worthington's Lessee* v. *Young*, 6 Ohio, 136; *McFarland* v. *Febiger's Heirs*, 6 Ib.

337; *Carr* v. *Williams*, 10 Ib. 305; *Silliman* v. *Cummins*, 13 Ib. 116; *Purcell* v. *Goshon*, 17 Ib. 105; *Providence* v. *Manchester*, 5 Mass. 59; *Hayden* v. *Wescott*, 11 Conn. 129. And the reason of the rule is shown in the same cases.

In *Elliot* v. *Piersol*, 1 Pet. 338–9, the Supreme Court of the Union states the question so as to cover the present case: " The general question involved in the first instruction is, Can the privy examination and acknowledgment of a deed, by a *feme covert*, so as to convey her estate, be legally proved by parol testimony? We hold that they cannot." * * * * " What the law requires to be done and appear of record, can only be done and made to appear by the record itself, or an exemplification of the record. It is perfectly immaterial whether there be an acknowledgment or privy examination in fact, or not, if there be no record made of the privy examination; for, by the express provisions of the law, it is not the fact of privy examination merely, but the recording of the fact, which makes the deed effectual to pass the estate of a *feme covert*." The cases above cited from 1 Binney, 470, and 9 Sergeant & Rawle, 268, are much like the present one. In the latter, C. J. TILGHMANN says: "In that case, (1 Binney,) the certificate of the magistrate was defective, and, in order to supply the defect, parol evidence was offered and was refused by the court. There would be no certainty in titles, if this kind of evidence were permitted. After the lapse of twenty years, the magistrate is called upon to declare what took place at the time of the acknowledgment. The law directs the magistrate to make his certificate in writing, and he has made it. To that the world is to look, and to nothing else."

Some of the cases indicate, that the law required the officer to record the fact in his office. Perhaps this was in addition to the certificate upon the deed. But the cases in Pennsylvania, and others, show that the entering or recording it on the deed, is the same thing. The cases cited by the respondent do not controvert this doctrine. Not one of them, which we have been able to see, holds the contrary. The case of *Chessuet* v. *Shane*, 16 Ohio, 599, turns upon a

relieving statute, and partly, perhaps, upon the portion of the certificate which was omitted—that is, the making the contents known. Upon principle, we should think this as important as any other part. But that this case was not understood to overrule totally the previous cases in Ohio, cited above, will probably appear from that of *Purcell* v. *Goshon*, 17 Ohio, 105, in which one of those cases is recognized. Or, if it does overrule them, it is upon the strength of the enabling statutes referred to. Some of the cases cited by respondent, recognize the right of the grantor to contradict the certificate. Such is that of *Jackson* v. *Schoonmaker*, 4 Johns. 169. This right exists, for instance, when fraud is supposed in obtaining the acknowledgment, or when the certificate is alleged to be false, and it is proposed to show that the deed never was acknowledged. And other cases may exist. And this is the meaning of section 1230 of the Code, and of the act of 1840, referred to by respondent.

But this right is not to be confounded with the claim to supply the defects of the officer's certificate, by other evidence; nor was the above section intended to open the door to the mischief which might be expected to follow the latter doctrine. See, also, *Raverty et ux.* v. *Fridge*, 3 McLane, 220; *Barnet* v. *Barnet*, 15 S. & R. 72; *Jamison* v. *Jamison*, 3 Wheat. 457; *Landon* v. *Blythe*, 16 Penn. 532; *Young* v. *Thompson*, 14 Ill. 380.

Let us look a moment at the former law and the statute. At common law, the wife's dower could be barred only by the formal and expensive process of fine and common recovery. The provisions of statute are a substitute for this, and there must be a substantial compliance. The above act, (1840, 35,) in section 8, provides, that "any officer taking the acknowledgment of such instrument in writing—that is, of one conveying or affecting real estate—or taking the relinquishment of the dower of a married woman, or any conveyance of the real estate of her husband, shall grant a certificate thereof, and cause such certificate to be indorsed on such instrument or conveyance." By section 20, it is enacted, that she "may relinquish her dower by any conveyance

executed by herself and husband, and acknowledged and certified in the manner hereinafter prescribed." And by section 23, the certificate of such relinquishment shall set forth, &c.  This mode is instead of the fine and common recovery at common law, and clearly it must be in writing. And then the above cases, and their reasoning, apply with full force to the method prescribed by that act.  We think the defects of the certificate cannot be supplied by other evidence.  The authorities before referred to prove farther, that the matters omitted from the acknowledgment in the present instance, are essential to its validity; and that a court of chancery cannot extend its powers of relief so far as to amend it, by the assistance of extrinsic evidence.

The defendant suggests the further question, whether the complainant would be entitled to dower in this lot, if she had not signed the deed.  And under this, he starts the query, whether the common law is the law of this state. This question has been suggested in this court before, but it has not been with apparent seriousness, and therefore it has received no formal answer; and it is not now pressed, with an appearance demanding more than a suggestive reply.  In the first place, according to our recollection of history, the common law was substituted for the civil by the Missouri territory, of which this state was once a part.  In the next place, so many rights and titles—so great interests have grown up, as if by and under the common law, and not by and under the civil—that it would be the duty of a court to hold that the people brought it with them.  The territory has from the beginning, including all private rights and titles, been administered upon the basis of the common law, and to hold that the civil, and not the common law, is the law of this state, would produce startling and revolutionary effects.  The extent and magnitude of the interests involved, would require a court to hold to the common law, if there was no other reason.

But, besides this, all our laws, back to the beginning of the territory, recognize—assume the common law.  They would many of them, be unmeaning, senseless, without it.  All

the proceedings of the courts would be so, and not a judgment heretofore recovered would be valid, nor a title under it. But the ordinance of 1787, for the government of the Northwest Territory, made it the law of that country; and that was extended over Wisconsin, and then the laws of Wisconsin, over Iowa. And although the statutes of Michigan and Wisconsin were repealed in 1840, the ordinance of 1787 was not affected, but remained in full vigor as before. That ordinance made the law of dower one of the fundamental laws. We will not stop to inquire in what it gave dower, for the act of January 25, 1839, (§ 44,) prescribes it, "according to the course of the common law;" and that was, that she was endowable of all the land of which the husband was seized during marriage. Thus stood the law of dower when the deed in this instance was made.

Again: respondent claims, that the law of 1839 was repealed by the act of 1843, without any saving clause; and thus, that law does not rule this cause: and then he urges that the act of 1843 was repealed by the Code in 1851, which was before the institution of this suit; and that complainant makes her claim under the Code. In the case of *O'Ferrall* v. *Davis*, 4 G. Greene, 358, this court held that the wife's right of dower is governed by the law in force at the time of the making of the deed, and not by that in force at the time of the husband's death. This was recognized in *Young* v. *Walcott*, 1 Iowa, 174. No reason for departing from that decision is yet seen. See, also, *Hitchcock* v. *Harrington*, 6 Ohio, 290; *Walker* v. *Schuyler*, 10 Wend. 480.

The defendant and appellant also makes the question, whether the doweress is entitled to damages. A demand is alleged. By the original common law, the doweress could not recover damages for the detention of her dower. This was remedied by the statute of Merton, 20 Hen. III, A. D. 1236. Under this statute it was held, that she should recover damages *from the death of her husband*, when he *died seized;* but if he did not die seized, but had aliened the land, she should recover damages from the time of *making a demand* only.

O'Ferrall v. Simplot.

It becomes, in some measure important, then, to inquire what effect, if any, the statute of Merton has in this state. Experience, and the dictates of justice, produced the enactment of that statute, and they have lost none of their force in the periods which have passed since that time.  It is urged that this ancient statute can have no effect here, because of the enactment of the sixth section of the act of July 30, 1840, (Special Session, 1840, chap. 29, 20,) which is, that "none of the statutes of Great Britain shall be considered as law of this territory."   The enactment of this chapter, containing a repeal of the laws of Michigan and of Wisconsin, as well as the above declaration in reference to the statutes of Great Britain, was then, and has ever since been, considered of very doubtful wisdom, and of no less doubtful effect. It seemed to be taking a step in the dark.   That act did not receive the approval of the governor of the territory.   He was a man of age, experience, and of careful forethought, and his approval was withheld through doubts and fears of the consequences of such a step.   The lawyer can readily perceive that there was much reason for hesitation.   The statutes of England, from time to time, modified and meliorated the common law to a considerable extent.   Some of them were necessary to deliver the nation and the law from feudal principles, and some were requisite to adapt the law to an improved state of society emerging from feudal semibarbarism, and to suit an increasing spirit of commercial enterprise.   In this view of them, these statutes were as much required by the people of America, as by those of the mother country.   Many of them of a general character, and an enabling or remedial nature, have been adopted by the different states, (even by the new western ones,) either by express statute provision, or by re-enactment, or by judicial construction; the latter sometimes declaring them adopted, and sometimes considering them as become the common law of the state.   Sufficient has probably been said to recall to our minds the importance of some of these acts, and the necessity that we should, in some manner, receive the benefit of the leading and most important of them.   And these

remarks will justify us in saying, that we are not disposed to give to the above-named section, relating to the statutes of Great Britain, any greater effect than is necessary.

Then the question is, whether the declaration of that section extends to the statutes of England. Great Britain is not the same with England, although it includes it. The greater part, if not all, of those beneficial acts, which have been adopted into the laws of the American States, were enacted before the union with Scotland. The periods at which the English statutes have been held to cease operating upon American law, have been different in different states. Some have stopped at the fourth of James I, which was about the period of the first emigration to this country; some have fixed the epoch of our revolution; and some, if we mistake not, that of the revolution of 1688. The act of 1840 may reasonably be considered as having prescribed the event of the union of the crown of England with that of Scotland, which was nearly contemporaneous with that of the English revolution, it having taken place in the year 1707. This is more reasonable, than to regard that declaration as to the statutes of Great Britain, as synonymous with a like declaration in relation to the statutes of England, which would receive support from neither history, language, nor the principles of interpretation. We conclude, therefore, that the statute of Merton is not deprived of any effect by the foregoing declaration of the act of 1840. What force, then, is to be given to it? We have not made the foregoing remarks, in order to answer this question in the fullest extent, for of this we are relieved, as will be shown hereafter—that is, there is no necessity for deciding whether damages would now be recovered under that statute alone; but the law and the decisions, as they were held under it, are necessary to determine from whom those damages may be taken, and when, and from what time.

As to the mere question, whether damages are recoverable in an action for dower, it may be safely answered that they are, and ever have been, by our law. The act of December 29, 1838, relating to the action of right, in section

one, declares that to be the proper remedy for recovering any interest in land; section 56 expressly recognizes it as the appropriate action for the recovery of dower; and section 21 gives damages, by way of the use, occupation and profits accruing within six years prior to the commencement of the action. This act continued the law until the adoption of the Code. Stat. 1843, 527. That of February 16th, 1843, was but an amendment of it, (Stat. 1843, 257); and that relating to the action of ejectment does not interfere with it, at least in this respect. Stat. 1843, 259. Chap. 116 of the Code relates to actions for the recovery of real property, and the enactments of that chapter apply to " any person having a valid subsisting interest in real property, and a right to the possession thereof." Section 2027 in the same chapter, recognizes it as the proceeding to recover an interest in dower, and section 2008 gives damages under the name of the use and occupation for six years prior to the commencement of the action. It is immaterial, then, under which of these statutes the widow may claim, for under both she is entitled to them. But the terms of. both are very general, so much so as to apply to every kind of interest in land, and therefore it is necessary to go beyond them, to learn of whom, and from what time, they may be demanded. Can she recover them from the time of her husband's death? Our statute says, for six years only. Can she recover them from the heir and his alienee, only, or also from the husband's grantee? Our statute does not answer; but the adjudications under the statute of Merton, inform us that she may recover against the grantee of the husband, if she has made demand, and only from the demand; and thus we perceive that the six years of our statute must be restrained by the time of making such demand. Bright's Hus. & Wife, 407, §§ 32 to 47; 1 Hill'd on Real Prop. 144 to 151; Sedgwick on Dam., 129 to 132. We learn, therefore, that the doweress is entitled to recover damages for the detention of her dower, from the alienee of her husband, or his grantee, as measured by the use and profits at least, from the time of the demand, pro-

vided that were not more than six years prior to the commencement of the action.

Finally, the defendant claims, that the court below should have ordered the assignment of dower to be made in the three lots, for all the four. Michael Tiernan had become the owner of the four, and devised them to his executors, who conveyed No. 66 to the defendant, but still hold the first three, and an action for dower in them is now pending against the executors. These devisees consent that, if the complainant is entitled to dower in these lots, it may be assigned in the three first named, for the whole. At common law, this was done in a few instances only, and then, generally, on account of the nature of the property—as when it consisted of several mines; or on account of the inconvenience of dividing it, and setting out the dower by metes and bounds. But it was never done, it is apprehended, except when the husband died seized.

Two objections may be suggested to this course: If the widow takes one parcel instead of a third of each of three of which she is dowerable, she assumes the whole risk of the title in the parcel taken, and if she should be evicted, she has no voucher over. This consideration may not have weight in the present instance, when the title is the same to all; but in reference to a rule for general action, it has force. Another consideration of pertinency in some cases, is, that the fund or property to which the creditors of the deceased may resort—as, supposing Michael Tiernan himself had conveyed to the respondent—would be diminished by just so much as the respondent's lot is relieved. Here, again, we admit that this argument may not have particular point in the present case, for the deceased did not convey the lot, but the executors—or there may be no debts or other claims, but of this we are not informed—yet the rule adopted must apply to all. The consent of the executors would not take away the creditor's power of interference; and, moreover, although the executors consent, the great question is,—does the *doweress* consent. The court cannot compel her thus to

take her dower, and if she is not assenting, it cannot be done. The present case shows no concurrence on her part. 1 Hilliard on Real Prop. 157, *et seq ;* 1 Bright's Hus. and Wife, 367, *et seq.,* 404.

We are of the opinion that the decree of the District Court must be affirmed.