## GRAPENGETHER V. FEJERVARY.

9  163
79  350

1. MORTGAGE SALE: PARCELS. In the foreclosure of a mortgage, if the mortgage property is susceptible of division, only so much should be sold as may be necessary to satisfy the mortgage debt; and a refusal by the sheriff to sell in parcels when the value of the property exceeds the debt, and it may be divided, invalidates the sale.

2. SAME. When a mortgagee proceeded to foreclose his mortgage in the summary manner provided by Chapter 118, Code of 1851, and the mortgagor demanded a sale of the mortgaged property in parcels, commencing with one lot, the value of which was sufficient to discharge the debt, which was refused by the sheriff under instructions by the mortgagee, and another parcel exceeding in value the amount of the debt was sold: Held,

1. That the sale was not conducted in accordance with the requirements of section 2091, Code of 1851.

2. That in such summary proceedings, under a statute, the requirements of the statute must be substantially complied with.

3. That the sale was invalid and should be set aside on the application of the proper party.

3. THE GRANTEE UNDER AN INVALID SALE MAY BE SUBROGATED. The purchaser or his grantee, of property sold in invalid proceedings for the foreclosure of a mortgage, may be subrogated to all the rights of the mortgagee in regard to the mortgaged property; and may recover from the mortgagor, the mortgagee, and the officer who acted in the proceeding, the difference between the amount secured by the mortgage and the purchase money paid.

4. DEED BY A MARRIED WOMAN. When the legal title to real property is vested in a married woman, who joined with her husband in the execution of a deed by the granting clause of which they "grant, bargain sell and convey" said property, and in the concluding clause of which the wife "relinquishes all her right of dower in said premises;" Held,

1. That the whole estate of the wife was passed by the deed.

2. That the relinquishment of dower cannot be construed as limiting or qualifying the interest conveyed by the granting clause.

5. SAME. When by statute a mode is prescribed whereby a married woman may convey her real property, if the directions of the statute are not complied with, the deed is void as to her. It will not be treated as an imperfect conveyance; nor will a mistake in the deed of a married woman be rectified, as against her. 6 Wend. 9; 10 Ohio, 105.

6. SAME: CONTRACTS. Under the Code of 1851, the contracts of a married woman, in relation to her separate property, are binding without the assent of her husband.

Grapengether v. Fejervary.

7. ASSIGNMENT OF A PORTION OF A DEBT SECURED BY MORTGAGE: PRIOR-
   ITY. When one of several notes secured by the some mortgage has
   been assigned, the holders of the notes first maturing are entitled to
   be paid first from the mortgage property. An assignment of a portion
   of a mortgage debt operates as an assignment of the mortgage *pro
   tanto*.
8. PURCHASE MONEY: LIEN. The grantor of real property is entitled a
   lien on the property sold, for the purchase money, as against his
   grantee and subsequent purchaser with notice.

*Appeal from Scott District Court.*

SATURDAY, JUNE 25.

The plaintiff was an infant and sole heir of Herman Grap-
engether, who died while on his way to Davenport, Iowa, in
1854. His mother, Fredrika, received the money and prop-
erty which belonged to her husband, and on arriving at
Davenport, was duly appointed and qualified as the adminis-
tratrix of his estate. A portion of the money received by
her as such administratrix was loaned. In July in the same
year she purchased lot eighteen, and the east half of lot sev-
enteen, in Green's addition to Davenport, for $850; $450 of
which was paid at the time, and the remainder was divided into
four installments, to be paid to the defendant, Fejervary, the
creditor of Langer, the grantor. The payment of these install-
ments was secured by a mortgage on the premises. It is
admitted that the $450 was paid out of the money in Fred-
rika's hands belonging to her husband's estate. The defend-
ants deny that the subsequent incumbrancers had any knowl-
edge of that fact when their liens were created.

Shortly after this purchase, Fredrika intermarried with
Conrad Zierdt. On the 29th March, 1855, Zierdt conveyed
this property to Ludwig Jannsen, who paid $600 down, as-
sumed the debt of $400 to Fejervary, above mentioned, and
executed his notes; one for $900, due May 1st, 1855; one for
$400, due April 1st, 1856; one for $700, due April 1st, 1857.
These notes, and a mortgage on the east half of lot seven-
teen, were executed to Zierdt and his wife jointly; lot eight-
een being omitted in the mortgage, in consideration of the

$600 paid, and for the purpose of enabling Jannsen to convey it, and make a good title.    The deed of conveyance, after reciting that it is an "indenture between Conrad Zierdt and Fredrika his wife" of the first part, and Ludwig Jannsen, grants, bargains, sells and conveys to said Jannsen the property above mentioned.    The last paragraph is as follows: "And the said Fredrika Zierdt hereby relinquishes all of her right of dower in said premises."    Jannsen afterward conveyed the premises to William Hansen, who assumed his liabilities arising out of the contract of purchase.    On the 3d, day of May, 1855, Hansen conveyed lot eighteen and the east half of lot seventeen to Austin Corbin, in trust, to secure the payment of $393,75, money borrowed from F. H. Cutting.    On the 11th day of June, 1855, Zierdt and his wife, jointly assigned to Luman Foote, the note of Jannsen for $700, due April 1st, 1857, together with the mortgage executed by Jannsen.    On the 20th July 1855, Fejervary, gave notice, by the sheriff, that on the 25th day of the August following, he would sell this property to pay the first and second installments of purchase money, then due and unpaid. On the day of sale, George E. Hubbell, as the attorney of Zierdt and wife, and Luman Foot, demanded the sale of lot eighteen separate from the east half of lot seventeen; on the ground that it was less valuable than the east half of lot seventeen, while it was amply sufficient to pay the mortgage debt.    It also appears that there was a person present, ready and willing to bid the amount of the mortgage debt, on lot eighteen; that the sheriff after consulting with the attorney of Fejervary refused to offer it for sale; that he did offer the east half of lot seventeen, and sold it to George G. Arndt for the sum of six hundred dollars.    Of this sum about four hundred and forty-five dollars were paid to discharge the mortgage debt, and the expenses of the sale; and the balance was paid to Zierdt.    Arndt then conveyed to McGregor, Lawes & Blakemore.

Before this advertisement and sale, Zierdt and wife commenced proceeding in the District Court of Scott county to

foreclose the Jannsen mortgage, on the note for $900 remaining in their hands. Foot was not made a party to this action; Fejervary was. Judgment was rendered in favor of the plaintiffs in that action, at the October term, 1855. On the 13th of November, 1855, Fredrika Zierdt executed a declaration of trust in favor of the plaintiff, and conveyed lot eighteen and the east half of lot seventeen, to him. This action was immediately instituted to cancel the sale by the sheriff to Arndt; to set aside the deed from Zierdt and wife to Jannsen, and from Jannsen to Hansen, or in the event of their being declared valid, that his lien for the purchase money should be established against lot eighteen as well as the east half of lot seventeen, and for a foreclosure. Fejervary, Leonard, (the sheriff,) Jannsen, Hansen, Conrad Zierdt, and McGregor, Lawes & Blakemore, were made parties defendant. By an amended petition, Austin H. Corbin and F. H. Cutting were made parties, with the prayer that they be restrained by injuction from completing a sale of lot eighteen, then advertised under the deed of trust from Hansen to Corbin. Foot the assignee of the Jannsen note for $700, and the mortgage, was proceeding to foreclose the mortgage by summary proceedings under chapter 118 of the Code, when he was made a party defendant in the action, by a further amendment of the petition praying for a cancellation of the mortgage, and an injunction was issued restraining any further proceeding thereunder. On the 6th of August, 1857, an execution was issued upon the decree of foreclosure in favor of Conrad Zierdt and Fredrika Zierdt, against Jannsen, under which the east half of lot seventeen was sold to Foot on the 19th day of September. On the hearing the court decreed: *First*, That the sheriff's sale of the east half of lot seventeen, to Arndt, be set aside and the deed cancelled. *Second*, That McGregor, Lawes & Blakemore be subrogated to the rights of Nicholas Fejervary under his mortgage, amounting with interest to July 8, 1858, to $520. *Third*, That Harvey Leonard, Nicholas Fejervary and Conrad Zierdt pay to McGregor, Lawes & Blakemore, one hundred and sixty

dollars with interest from the 15th day of August, 1855, difference between amount due at time of sale, and amount for which the lot sold. *Fourth*, That Hansen's representatives be permitted to redeem both lots, upon paying the amount due Fejervary; amount due plaintiff upon the notes of Jannsen; amount due Foot; and the amount due Cutting, in all $3760,33—upon failure, then,—*Fifth*, That plaintiff may redeem both said lots by paying the Fejervary mortgage,. note for $700 due Foot, and the note to Cutting, in all $1,978; if neither redeem, then,—*Sixth*, That Luman Foot may redeem the east half of lot seventeen, by paying Fejervary's mortgage, notes for $900, and $400, and interest, in all $1705; if no redemption is made by either of said parties, then,— *Seventh*, That F. H. Cutting may redeem lot eighteen by paying such proportion of the Fejervary mortgage, as the value of lot eighteen bears to the east half of seventeen, aside from improvements on the latter, agreed to be as two to one, and the plaintiff to pay the remainder of the mortgage to Fejervary; upon failure of all these parties to redeem,—*Eighth*, That both lots be sold in separate parcels, the proceeds to pay first the amount due on Fejervary's mortgage, from the two lots in the proportion above named, and the balance of lot eighteen to be applied to the payment of the note to Cutting; the proceeds of east half of seventeen, to the notes of Hansen secured by the mortgage to Zierdt, in the order in which they matured: *First*, $900 and $400 to plaintiff, and *Second*, $700 to Foot, and that the defendants pay the costs.

The defendants, Cutting, Foot, Fejervary and Leonard, appeal.

*Corbin & Dow*, for the appellants.

I. The sheriff in the sale under the Fejervary mortgage, was bound to take such course as would best protect all the incumbrancers. In proceeding upon the first mortgage, embracing both lots, upon one of which Cutting had the next incumbrance, a court of equity would compel him to sell the one upon which Cutting had no lien. 1 Hill. Mort. 227, and

note; 1 Story Eq. Jur. sec's 559–563; *Cummings* v. *Cummings*, 3 Kelly, 461; *York & Jersey Co.* v. *Jersey Co.*, Hopkins Ch. 460; 5 John. Ch. 33; 2 Paige, 300; 8 Ib. 279; 9 Conn. 403; 2 Atk. 446; *Conrad* v. *Harrison*, 3 Leigh. 547; *Ayres* v. *Hasted*, 15 Conn. 503; *Pettibone* v. *Stevens*, Ib. 18; 9 Cowan 403; 19 John. 492, *Cheesebrough* v. *Willard*, 1 John, Ch. 408, and cases therein cited.

II. If Cutting must contribute to the satisfaction of the Fejervary mortgage, the value of the property upon which the contribution is based, should be estimated at the time he made the loan, or at the time of the sale under the decree. *Green* v. *Ramage*, 18 Ohio 428; *Dickey* v. *Thompson*, 8 B. Mon. 312; *Clowes* v. *Dickerson*, 9 Cowen 403.

III. A sale under a statute is equivalent to a foreclosure and sale under a decree, 10 John. 185; 5 Wend. 295; 5 Hill 272; 2 Cowen 195; 2 Met. 29; 15 Ohio 84, 467; 4 Kent 191 (margin.)

IV. Foot has priority, because when a mortgagee assigns a portion of the debt secured by the mortgage, the assignee is preferred if the property prove insufficient. *Mechanic's Bank* v. *Bank of Niagara*, 9 Wend. 410; *Everston* v. *Booth*, 19 John. 485. The assignment to Foot carried with it all the securities. *Phillips* v. *The Bank of Lewistown*, 18 Penn. 394; *Mott* v. *Clark*, 9 Barr 399; *Van Renssalaer* v. *Stafford*, Hop. Ch. 569; *Warder* v. *Adams*, 15 Mass. 223; 8 Mass. 531; 17 Mass. 425.

V. Leonard accounted for the money in his hands, and appropriated it as required by law. It cannot be recovered from him, by Arndt or his grantees. There is no warranty on the part of the officer, nor is he liable. *Worthy* v. *Johnson*, 8 Geo. 237; *Hensley* v. *Baker*, 10 Missouri 157; *England* v. *Clark*, 4 Scamm. 486; *Freeman* v. *Caldwell*, 10 Watts 9; *Commissioner* v. *Thompson*, 4 McCord 434; *Morgan* v. *Fencher*, 1 Black. 10; *The Monte Allegro*, 9 Wheaton 616; 4 Kent 466, note.

*James Grant*, for Grapengether.

I. The sale by the sheriff under the mortgage to Fejervary, on the 25th of August, 1855, was null and void. A special authority under which a party may be divested of his title must be strictly pursued in every material particular. *Powell* v. *Tuttle*, 3 Conn. 396; *Olmsted* v. *Elder*, 1 Seld. 144; *Thatcher* v. *Powell*, 6 Wheat. 119; *Davenport* v. *Young*, 16 Ill. 348; *The State* v. *Turnpike Company*, 3 Zab. 547; 4 Kent 146, (margin.)

The deed was delivered and recorded without the affidavits of service and publication of notice as required by section 2079 and 2080 of the Code. Proof of the service and publication of notice cannot be made *aliunde*. *The Mayor* v. *Freeze*, 3 Hill. 612.

II. The deed from Conrad Zierdt and wife, to Jannsen, conveyed no title to the vendee. The legal title was in the wife, in trust for the plaintiff. The deed conveys only the husband's estate; *the wife making no covenants and releasing her dower*. It must appear from the whole deed that she intended to convey her title. *Catlin* v. *Weare*, 9 Mass. 220; *Fowler* v. *Shearer*, 7 Ib. 14; *Lufkin* v. *Curtis*, 13 Ib. 223; *Bruce* v. *Wood*, 1 Met. 542; *Raymond* v. *Holden*, 2 Cush. 264; *Powell* v. *Mason*, 3 Mason 347; *Martin* v. *Dudley*, 6 Wend. 12; *Carr* v. *Williams*, 10 Ohio 305; *Cox* v. *Wills*, 8 Black. 410; *Blain* v. *Harrison*, 14 Ill. 386; *Stile* v. *Swan*, 6 Litt. S. C. 156; *Brown* v. *Spain*, 2 Mills Const. R. 16; (marg. 12) *Mariner* v. *Sanders*, 5 Gil. 113; *Mann* v. *Block*, 11 Ill. 273; *Sibley* v. *Campear*, 4 Mich. 567; *Churchill* v. *Monroe*, 1 Rhode Island 209; —— v. *Richardson*, 7 Mon. 654; *Burnett* v. *Shackleford*, 6 J. J. Marsh. 532; 3 B. Mon. 217; *Urquhart* v. *Clarke*, 2 Randolph 549; *Hanston* v. *Randolph*, 12 Leigh 445; *Healy* v. *Rowan*, 5 Grattan 414; *Perry* v. *Calhoun*, 6 Hump. 557; *Hamill* v. *Elliott*, Taylor N. C. R. 86 (margin 139) *Robinson* v. *Barfield*, 2 Murphy 390; *Gilchrist* v. *Bruce*, 2 Dev. & Battle's R. 359; *Jones* v. *Dennis*, 8 Iredell 70; *Ethredge* v. *Ashber*, 9 Ib. 353; *Asken* v. *Daniel*, 5 Iredell's Eq. 321; 1 Harris & John. 291; 1 Binney 70.

III. The decree very properly requires Cutting to contribute to the satisfaction of the Fejervary mortgage. Each subsequent purchaser must contribute his share. 1 Story Eq. Jur. section 484. If he comes in under a cross bill, he must redeem the whole debt. 5 Pick. 146, 279.

IV. Where several notes are secured by the same mortgage, the holders of the first notes maturing are entitled to be first paid. The assignment of one of several notes secured by a mortgage, operates as an assignment of the mortgage *pro tanto. Thayer* v. *Campbell,* 9 Mo. 277; *The State Bank* v. *Tweedy,* 8 Black. 449; *Stockton* v. *Johnson,* 6 B. Mon. 408; 13 Ohio 240; *Hunt* v. *Stiles,* 10 N. H. 416.

*Charles E. Putnam,* for MacGregor, Lawes & Blakemore.

I. The sheriff, Leonard, was a competent witness for Mac-Gregor, Lawes & Blakemore, to prove the regularity of the sale under the Fejervary mortgage. He is a formal party only to this action. *Block* v. *Chase,* 15 Mis. 344; 14 United States Dig. 599, sec's 69–70; 12 Ib. 603 sec's 52; *Craddock* v. *Thornton,* 11 B. Mon. 100; *Regan* v. *Eckels,* 5 Geo. Rep. 71; 3 Am. Ch. Dig. 620, sec. 85, and cases cited; Ib. 628, sec. 173; *Nealson* v. *McDonald,* 6 John Ch. 201; *Williams* v. *Maitland,* 1 Iredell 92; *McLaren* v. *Hopkins,* 1 Paige 18; *Williams* v. *Beard,* 3 Dana 158; *Higgins* v. *Morrison,* 4 Dana 106; *Beebe* v. *The Bank of N. Y.,* 1 John. 555; 3 Greenl. Ev. 307 and notes.

II. It is claimed that, under the Code, the only evidence admissible to prove the regularity of the mortgage sale, was the affidavits referred to in the sheriff's deed, but unquestionably other evidence will do as well. *Arndt* v. *McClure,* 4 Denio 41; *Humphrey* v. *Beeson,* 1 G. Greene 199; *Hopping* v. *Burnam,* 2 Ib. 39; cases cited in 12 U. S. Dig. 294, sec. 2053; Black. Tax Titles 597; *Hawley* v. *Bennett,* 5 Paige 104; *Layman* v. *Whiting,* 20 Barb. 563; *Jackson* v. *Calden,* 4 Cowen 266; 2 N. Y. Rev. Stat. 547, sec's 3, 9 and 12.

III. The validity of MacGregor, Lawes & Blakemore's

title to the east half of lot seventeen, cannot be prejudiced by the failure of Arndt or the sheriff to record the affidavits and returns of the officer with the deed.    Sections 2079 and 2080 of the Code are merely *directory*.    Black. Tax Titles 187, and notes; *Webster* v. *French*, 12 Ill. 302; *Craig* v. *Bradford*, 3 Wheat. 594; *Voorhes, Longworth* v. *The Bank of the U. S.*, 10 Pet. 449; 12 Curtis U.·S. C. R. 193; 1 Smith's Lead. C. 426; *Hopping* v. *Burnam*, above cited; *Humphrey* v. *Beeson*, above cited; *Corrill* v. *Doolittle*, 2 G. Greene 385; *Cavender* v. *The Heirs of Smith*, 1 Iowa, 306, 350.

IV.  A mortgage to secure an indebtedness payable in installments, may be foreclosed at the maturity of one installment, a suitable rebate of interest on the amount not due being made.    Code 1851, section 2090; *Berger* v. *Heister*, 6 Wheat, 201; *Peyto* v. *Agnes*, 2 Md. Ch. Decis. 64; *Wylie* v. *McMehin*, Ib, 413; *Lamerson* v. *Marvin*, 8 Barb. 9; *Cecil* v. *Dyners*, 2 Carter (Ind.) 266; *Wilson* v. *Wilson*, 4 Iowa 312; *Bank* v. *Chester*, 11 Penn. (1 Jones) 282.

V.  Notice to a sheriff at a sale of real property is not notice to the purchaser.    *Hopping* v. *Burnam*, above cited *Stahle* v. *Spohn*, 8 Serg. & R. 317.

VI.  There were other incumbrances on lot eighteen, alone, and the sale of the east half of lot seventeen, would be enforced by a court of equity to protect encumbrancers having a lien upon lot eighteen only.    *Fry* v. *Merchants' Insurance Co.*, 15 Ala. 810; *Winters* v. *Henderson*, 2 Halst. Ch. R. 31; *La Crosse* v. *Keegan*, 2 Carter (Ind.) 406.

VII.  The sale of mortgaged premises by summary proceedings under a statute, is equivalent to a foreclosure and sale under a decree of court, and cannot be defeated to the prejudice of a *bona fide* purchaser.    *Jackson* v. *Henry*, 10 John. 185; *Wilson* v. *Troup*, 2 Cowen 195, 230; 5 Hill. 272; 2 Met. 29; *Lessee of Fosdrich* v. *Rice*, 15 Ohio 84; *Freely* v. *Trepper*, Ib. 467; *Bergen* v. *Bennett*, Caines Cas. in Er. 17.

STOCKTON, J.—The decree setting aside the sale of E. ½ lot 17, made by the sheriff under the foreclosure of Fejervary

was authorized by the facts shown in the record. The pro-
ceeding instituted by Fejervary was to foreclose his mortgage
by notice and sale by the sheriff, under the statute, for the
non-payment of two notes for one hundred dollars each, due
respectively January 3d, and July 3d, 1855. The sheriff
should have sold only so much of the mortgaged premises as
might be sufficient to pay these notes with interest and costs.
(*Code*, *Sec.* 2091.) Instead of this he sells the *east half of
lot* 17, with the house and improvements thereon, for six
hundred dollars. It is not shown whether or not the half lot
sold was susceptible of sub-division so that a portion of the
same—enough to pay the debt—might have been sold. But it
is shown that lot *eighteen* was unimproved, and might have
been sold in parcels; and there is no sufficient reason why
it should not have been first offered for sale, if the half lot
was incapable of being divided. The sheriff was requested
to sell lot *eighteen* first; and a purchaser was present ready
to bid for it at least the amount of the debt. Upon the
promise of the mortgagee to indemnify him against any lia-
bility therefor, he refused to offer lot *eighteen* for sale, and
sold the E. ½ of lot *seventeen*, for three times the amount of
the debt. For this conduct of the sheriff, there was neither
apology nor excuse; and it furnishes good reason for holding
the sale made by him null and void. Unless the directions
of the statute are substantially complied with, the sale is in-
valid, and the sheriff's deed will be set aside on the applica-
tion of the party interested.

The defendants, Lawes & Blakemore, surviving partners
&c., were entitled to be subrogated to all the rights of Fe-
jervary under his mortgage; and so much of the amount paid
by Arndt for the half lot, at the sale made by the sheriff, as
the said mortgage will not reimburse to them with interest,
the said partners are entitled to recover the same from said
Leonard, Fejervary and Zierdt, and the decree of the District
Court in this respect is affirmed.

The counsel have argued at some length the question
whether any title passed to Jannsen under the deed from

Zierdt and wife. The question is not as to the proper execution of the deed. The deed is properly executed, and the authorities cited to that point are irrelevant. The question to be decided is whether the fee simple estate of the wife passed by the deed. By our statute it is provided that a married woman may convey her interest in real estate in the same manner as other persons. *Code, sec.* 1207. If the husband and wife join in a conveyance of the wife's estate, no private examination of the wife is necessary to render valid the execution of the deed. If the deed in this instance had stopped with the covenant of warranty by the husband, there could be no question but that the whole estate of the wife had passed to the grantee. What then is the effect of the subsequent and concluding clause in which the wife relinquishes her right of dower in the premises? Without these words of relinquishment the deed answered for the purpose of conveying any estate vested in the wife, whether in dower or an inheritance in fee simple. It is in the usual form by which the interest of the wife in lands, of whatever kind, is conveyed. There is nothing, it is true, in the language of the preceeding part of the deed to distinguish whether a fee simple, or a dower estate was intended to be conveyed. But the conclusion is not legitimate from this fact, that the concluding words in which the wife agrees to relinquish her right of dower, were addded by her to limit the estate conveyed to a dower interest only. She had in the granting part of the deed, conveyed all her interest in the premises, and she had no dower right to convey or relinquish.

At common law a married woman could not, by uniting with her husband in a conveyance, bar herself of any estate of which she was seized in her own right; and where by statute a mode is prescribed in which she may execute a conveyance of her land,—as that the husband shall join with her in the deed,—if the directions of the statute are not complied with, the deed, as at common law, is inoperative and void as to her. It will not be treated even as an imperfect conveyance, or an agreement to convey; nor will

a mistake in the deed of a married woman be rectified as against her.   *Martin* v. *Dwelly*, 6 Wend. 9 ; *Carr* v. *Williams*, 10 Ohio, 105.

Under the Code of Iowa, the property of the wife is to be regarded as her separate estate, which she may herself control, and her contracts in relation to which are binding without the assent of the husband.   The fact that he joined with her in the conveyance in this instance and covenants himself to warrant and defend the title, does not render it less a deed of the wife ; and we can only regard the words of the deed upon which the question is made, as something added, which cannot be understood as qualifying what has gone before, or limiting the interest conveyed, but as altogether superogatory.

After the payment of the Fejervary mortgage, the parties were entitled to liens on the premises in the order following: The defendant Cutting to the first lien on lot *eighteen* for the payment of his claim of $393.   The complainant, as the assignee of his mother and guardain, is entitled to a lien upon the whole premises for the unpaid purchase money; the notes in his hands for $900, due May 1, 1855, and for $400 due April 1, 1856, to be paid first; and the note for $700, in the hands of the defendant Foot, to be last paid.

The defendant Hansen was a purchaser with notice that the purchase money due from Jannsen to Zeirdt was unpaid; and although lot *eighteen* was not included in the mortgage, the lien for the unpaid purchase money extended to this lot as well as to the half of lot *seventeen*.   The order in which the parties are to redeem from each other was correctly fixed by the decree, as well as the disposition of the proceeds on the sale, should there be no redemption, and in this respect, as in others, the decree is affirmed.

Judgment affirmed.