ISETT & BREWSTER v. LUCAS *et al.*

## I. Per CURIAM.

1. **Mortgage:** ORDER OF PAYMENTS. In the absence of any legal or binding agreement, when a mortgage is executed to secure the payment of two or more notes, maturing at different times, the proceeds arising from a foreclosure of the mortgaged premises, should be applied to the payment of the notes in the order in which they fall due, whether in the hands of an original payee or assignee, and without reference to the order or time of their assignment.

2. **Evidence:** PAROL TO VARY MORTGAGE. Parol evidence is not admissible to show the agreement between the parties to mortgages for the purpose of altering or varying their legal effect.

3. Judgment: ASSIGNMENT: EQUITIES. That a judgment is an assignable chose in action, which an assignee takes subject to and charged with all the equities which could be asserted against it in the hands of the assignor, is a settled rule in this State.

II. Per COLE, J., LOWE, J., concurring: WRIGHT, Ch. J., and DILLON, J., expressing no opinion.

4. —— APPLICATION OF THE RULE. This rule does not apply when the equity claimed is not asserted by a party to the judgment, or an assignee of such a party.

5. —— INDEPENDENT EQUITIES. Equities between two parties to the judgment, arising from other and independent transactions, are not available against such instruments in the hands of an assignee.

*Appeal from Muscatine District Court.*

MONDAY, DECEMBER 12.

ON the 15th day of April, 1857, A. O. Patterson sold to James Hall a tract of land near the city of Muscatine. For the purchase-money unpaid, Hall executed two promissory notes for $4,133.33 each, payable in one and two years respectively, and to secure the payment of the same, Hall and wife executed two mortgages upon the real estate purchased, both of which mortgages were duly recorded at the same time.

On the 2d day of January, 1858, Patterson assigned, in blank, the note last due, to one Tufts, as collateral security for $1,100.00, and with the further agreement that the same might be also held as collateral for any future advancements by Tufts to Patterson. Tufts, afterward, and in 1859, advanced the further sum of $700 to Patterson, paid a note, whereon he was indorser, for $1,000, and became liable for Patterson for $1,500; and in January, 1860, it was agreed between them that Tufts should hold said note as his own absolutely, in satisfaction for said sums.

At the August Term, 1859, of the District Court for Muscatine county, Patterson obtained a judgment of foreclosure against Hall and wife upon the note and mortgage

first due, but no other than the mortgagors were parties defendant in said foreclosure proceedings. In November, 1859, Patterson sold and assigned the judgment to the defendant, John W. Lucas.

At some time, unstated, Tufts sold and indorsed the note last due, assigned to him by Patterson as aforesaid, to the plaintiffs, Isett & Brewster, who brought this suit to foreclose the mortgage against Hall and wife and others and John W. Lucas, claiming that, by agreement between Hall and Patterson at the time of the execution of the notes and mortgages, they were to be equal liens, and that neither was to have priority over the other, and that, by reason of an agreement between Patterson and Tufts, the note and mortgage last due was to have priority over the one first due. During the progress of the case in the District Court, Lucas filed a cross-petition, which was afterward dismissed by him, and to which Tufts filed an answer, which was, by agreement of parties (Tufts having since died), used as evidence on the trial. On that point, it was as follows: That, at the time the note and mortgage were assigned to Tufts as collateral security by Patterson, and when they were finally set over to him, and while Patterson and Tufts were negotiating in regard to the transfer, Patterson informed Tufts that he need have no fears of the transaction, as he would surely redeem the mortgage, and if for any reason he should not do so, that it was secured by three hundred and ten acres of valuable land which Tufts would get on a foreclosure; and Tufts did not know that there was another mortgage on the same land, nor did Patterson intend that Tufts should know such fact, as everything that he said and did was to the effect that the note and mortgage assigned to Tufts was the only incumbrance on the property, and Tufts so considered it and took it in good faith, as stated.

The testimony of Hall shows that, by agreement between

him and Patterson, made at and before the mortgages were
executed, they were to be equal liens, and neither to have
priority over the other.    The District Court rendered judg-
ment of foreclosure in favor of plaintiffs as against the
mortgagors and the other junior incumbrances, and adjudged
the claim of Lucas to be a prior lien and paramount to
plaintiffs'; but, inasmuch as neither plaintiffs nor Tufts
were parties to the foreclosure proceedings by Patterson of
the note and mortgage first due, gave to plaintiffs the right
to redeem from Lucas, who had purchased the property
under the foreclosure sale, by paying the amount of the
debt, with six per cent interest; and from this judgment
plaintiffs appeal.

*Richman & Brother* for the appellants.

*Henry O'Conner* and *D. C. Cloud* for the appellee (Lucas).

COLE, J. — I.  Independent of any legal and binding agree-
ment, where a mortgage is executed to secure two or more

1. MORT-
GAGE:
order of
payments.

notes maturing at different times, the proceeds aris-
ing from a foreclosure of the mortgaged premises
should be applied to the payment of the notes in
the order in which they fall due.    The different install-
ments in a mortgage securing such notes are regarded as so
many successive mortgages, each having priority according
to the time of its maturity; and where, instead of one mort-
gage being executed to secure several notes given for the
same indebtedness, a separate mortgage is given to secure
each note, the rights of the parties are identical. *The Bank
of the United States* v. *Covert et al.*, 13 Ohio, 240; *The State
Bank et al.* v. *Tweedy et al.*, 8 Blackf., 447; *Grapengether* v.
*Fejervary*, 9 Iowa, 163; *Rankin et al.* v. *Major*, Id., 297;
*Sangster* v. *Love et al.*, 11 Id., 580; *Hinds* v. *Mooers et al.*,
Id., 211; *Reeder* v. *Carey et al.*, 13 Id., 274; *Massie* v. *Sharp
et al.*, Id., 542.    Whether the notes thus secured are retained

by the payee and mortgagee, or are assigned to different parties, the right of priority of payment still attaches to them, nor does the time of, or order in which they are assigned, affect such right of priority.

II. The legal effect, then, of executing two mortgages to secure installments of the same debt, being to give priority

**2. Evi-** as to the proceeds of the mortgaged property to the
**DENCE:**
**parol, to** installments first due, such *legal effect* cannot be
**vary mort-**
**gage.** altered or varied by parol testimony, any more than the *language* of the written instrument itself. *Creery* v. *Holly*, 14 Wend., 30 ; *Barber* v. *Bruce*, 3 Conn., 9 ; *La Farge* v. *Ricker*, 5 Wend., 187 ; *Thompson* v. *Ketcham*, 8 Johns., 189. The parol testimony of Hall, therefore, as to the agreement between him and Patterson in relation to the two mortgages being equal liens, neither to have priority over the other, which is contrary to the legal effect of the mortgages themselves, is incompetent, and cannot be considered for the purpose of altering or varying such legal effect and priority.

III. The rule, that a judgment is an assignable chose in action, which an assignee takes subject to and charged with

**3. Judg-** all the equities which could be asserted against it
**MENT:**
**assignment:** in the hands of the assignors, was recognized,
**equities.** approved and applied by this court in the case of *Burtis* v. *Cook & Sargent·et al.*, 16 Iowa, 194 ; and is, therefore, the law in this State. The question, then, is, whether this case comes within the rule, and, if it does, whether the facts, as proved, establish any equity in favor of plaintiffs, as against the assignor.

The rule, as applied in the case of *Burtis* v. *Cook & Sargent et al.*, cited above, was between one party to the judg-

**4. —— Ap-** ment and the assignee of the other party to it ;
**plication of**
**the rule.** and such has been the relation of the parties in every case to which our attention has been called or given. The application of the rule in such cases is certainly very

equitable, and without difficulty. But in this case the asserted equity is claimed, not by a party to the judgment, nor by a person claiming under or in privity with a party thereto, but by a stranger to such judgment, who claims adversely to both parties. Does the rule stated apply to such a case? It seems to the writer of this opinion and Lowe, J., while Wright, Ch. J., and Dillon, J., express no opinion thereon, that it does not, but that another rule applies, which is applicable to other unnegotiable but assignable instruments or evidences of indebtedness, to wit, the

5. —— Independent equities. rule that equities between the parties to such instruments or evidences of indebtedness, arising from other and independent transactions, are not available against such instruments, &c., in the hands of the assignee. Neither the plaintiffs, Isett & Brewster, nor their assignor, Tufts, were parties to the judgment, and they were not, therefore, bound or concluded by it. The assignment of the judgment itself passed nothing as against them, only so far as such assignment carried with it the right to the claim upon which such judgment was rendered; and as to them, therefore, was only an assignment of such claim. Now, if the claim had been assigned before judgment, there is no question but the rule last stated would apply. But we have just seen that the judgment rendered upon the claim was not a judgment as to them; for they were not parties to it, and, hence, not bound or concluded by it. And, if they were not bound by it so as that their interests could be prejudiced through it, ought they to be permitted to avail themselves of it to prejudice the interests of others? We think not; for, in such case, there would be no mutuality. And, further, the equities which, under the general rule as stated, attach to the judgment in the hands of the assignee, are those equities which have grown up against the judgment itself, as such, and not those which might,

while in the hands of the assignor, have been made available against the claim upon which the judgment was founded.

IV. But even if the rule contended for by the plaintiffs was applicable to their case, it is very questionable whether the facts proved by them would bring their case within the rule. It appears from the answer of Tufts, which was admitted as evidence, that at the time he took the note and mortgage as collateral security, and when they were finally set over to him, Patterson represented that he would surely redeem it, but if he did not, it was secured by three hundred and ten acres of valuable land which Tufts would get on foreclosure. Tufts did not know that there was another mortgage, nor did Patterson represent that there was not another. There was certainly no agreement that plaintiffs' mortgage should have priority over the other, for the other was not mentioned. The other mortgage was upon record, and was notice to Tufts of its existence, and, doubtless, Patterson supposed Tufts knew of it; and, supposing such fact, every direct statement set out in Tufts' answer, as made by Patterson, is readily understood, and is consistent with truth. It may be doubtful, at least, whether the representations made to the witness, Col. Abbott, were made in the presence, or ever came to the knowledge, of Tufts; and, indeed, since Tufts himself does not state or claim that they ever did, it is reasonable to presume that they did not, and, therefore, they were not made the basis of the transaction, and, hence, not available in support of it. Again, it appears from the pleadings and evidence, that while Tufts took the assignment of the note and mortgage as collateral, *before* the assignment of the judgment, it also appears that the final purchase of it by Tufts was made *after* Patterson had sold the judgment to Lucas, and, of course, when he could not prejudice the rights of Lucas by any representations or agreement he might have made. It also appears that some of these representations by Patterson, (but which are not

shown,) were made to Tufts when the note and mortgage
" were finally set over to him," and, hence, after Lucas's
rights had attached.   It is not shown by plaintiffs when
Tufts became liable for the $2,500, part of the consideration
for the final assignment of said note and mortgage, nor
whether it was before or after the assignment of the judg-
ment to Lucas; if it was after, it must have been advanced
subject to his rights.

Nor is it made to appear when or for what consideration
the plaintiffs, Isett & Brewster, obtained the assignment
of the note to them; nor whether they had any knowledge,
at the time they acquired it, of the alleged representations
by Patterson to Tufts; nor whether they took the same
relying upon such representations.   Without further dis-
cussing the facts of the case, we think the plaintiffs have
not clearly established their equity as against Lucas, even
if the rule obtained which is contended for by them.   The
judgment of the District Court is

Affirmed.