McCANN
*vs*
EDWARDS

---

CHANCERY.

*Case 39.*

## McCann *vs* Edwards.

APPEAL FROM THE GRANT CIRCUIT.

*Vendor and vendee. Sales of land. Decrees. Executors. Equity..*

Oct 16.

CHIEF JUSTICE EWING delivered the opinion of the Court.

The case stated.

McCANN sold, by executory contract, a small tract of land to Edwards, for about $300, payable in instalments, and sued and recovered judgment for one of the instalments. Edwards filed his bill enjoining the judgment, and praying a rescission of the contract, alledging defect of title and an inability on the part of McCann to convey as he had covenanted to do.

Upon the hearing, the Circuit Court dissolved the contract and McCann has appealed to this Court.

Where a conveyance is produced from one of several joint patentees, which recites a purchase more than 5 years before, and uninterrupted possession under such deed for more than 30 years is shown, the Chancellor will presume a partition between the patentees, and although the deed may be made by an attorney in fact and no power produced, after such length of possession the defect of title is not such as to require a rescission.

There are several defects in the title of McCann, urged by the counsel of Edwards: 1st. That the grant under which he derives title, was issued to May, Bannister and four others, for 40,000 acres, and the conveyance to Chipman, through whom he claims, was made only by the heirs of May, and by one of them by power of attorney, which is not produced. At appears that Chipman and those claiming under him, have been in the undisturbed possession of the land in contest for more than thirty years, and it has been more than twenty years since the execution of the deed to Chipman, and that deed recited that he had purchased the land some five years before. From the lapse of time and undisturbed occupancy under a claim of absolute title, a partition between the grantees and due execution of the power under which the deed, as to one of the heirs is made, will be implied; and if such implication should not be indulged as to the power or partition, the Chancellor, in the partition and allotment

of the large tract among the grantees or heirs of May, would have respect to the purchase and occupancy of Chipman, and would so arrange the division as to allot the same to him or those claiming under him; there is, therefore, no reasonable ground to apprehend danger from this apparent defect of title.

2d. Nor should we feel authorized to dissolve the contract on account of the irregularities in the division among the heirs or devisees of Chipman, by which the land in contest was allotted to Sally Chipman, who afterwards intermarried with Hosa Harris, jr. though these irregularities are numerous, and in fact no conveyance was made by the commissioners appointed by the County Court under it, until long after the purchase of McCann under the execution hereafter mentioned. The division was made, as may be presumed, by disinterested and competent men, and the contrary does not appear, but that it was equal and just, and each of the heirs has used and occupied his several parcel, and some have sold and conveyed to others, and all have acquiesced in the division without murmer or complaint, for more than fourteen years. Under these circumstances, we cannot believe that there is any well grounded apprehension of danger to the title or possession on this score, such as will justify a rescission of the contract. And though the naked legal title may be imperfect, and there might be the possibility of disturbance at some future day, by some of the heirs, if such possibility would authorize a rescission, the Chancellor should, rather than rescind upon such a ground, suggest the difficulty, continue the injunction, and give time and opportunity to the vendor to amend his answer, making it a cross bill, so as to bring the devisees before the Court that the title might be perfected and claim and possession quieted. And the more especially should such indulgance have been granted in this case, as the title was not to be made until the whole consideration was paid, and Edwards, the vendee, had been let into the possession at the sale, and had continued and was still in the uninterrupted enjoyment of the same.

3rd. But there is a radical defect in the title of McCann under his purchase at the Sheriff's sale, which has not

Where a division has been made of land between heirs, and each has taken possession and enjoyed their part allotted to him for 14 years, without complaint, though no deeds have passed, yet it is not sufficient ground for rescinding a contract of sale by one who has purchased such title, and enjoyed and still enjoys the land—better that time be given to proceed by cross bill to quiet the title.

Where the husband has conveyed the land of

the wife, and the right of the vendor is that of a purchaser under execution sale of the land as the property of the vendee, he has not such title as a purchaser from him is bound to accept.

been removed, and cannot be corrected upon any claim, legal or equitable, which he has shown himself to have acquired. It appears that Hosa Harris, Jr., the husband of Sally Chipman, to whom the land in question had been allotted, sold the same by executory contract, to one Dean; that Dean conveyed it to John Chipman, and Chipman mortgaged it to one Peak. That one Hosa Harris, Sr. having recovered a judgment against Dean, before a Justice of the Peace for $25 and costs, and holding a small note upon him for $30, filed his bill against him as a non-resident, and against John Chipman and Peak, alledging fraud in the conveyance and mortgage, praying the annulment of both, and that the land might be subjected to the payment of his demands. Process was served upon Chipman and Peak, and publication made against Dean, which we regard as sufficient, as we regard the date of the *insertions* specified in the Editor's certificate, as the days of issuing the weekly paper, and calculating from the date of the first insertion to the end of the week succeeding the last insertion, the publication was continued more than two callendar months. The bill was taken for confessed against all the defendants, and a decree rendered annulling the conveyance and mortgage, and subjecting the land to the payment of the complainant's claims. No commissioner was appointed to sell the land or carry the decree into execution, nor any further steps taken under the order of the Chancellor, but an ordinary execution of *fi. fa.* was taken out on the decree, and levied on the land by the Sheriff ; and another execution for the costs against all the defendants, was also, at the same time, taken out on the same decree, and levied on the land, and the same was sold under both executions, and McCann became the purchaser for a small amount, and received the Sheriff's deed. It also appears that on the day of the sale, whether before or after it was made does not appear, that Harris and wife executed a deed to Dean for the land, which was acknowledged by Harris and recorded but was never acknowledged by Mrs. Harris. Her fee simple in the land consequently did not pass to Dean, and there is reason to believe that even the life estate of Harris, as the husband, did not

pass prior to the sale, for the want of a delivery of the deed, as it is proven in the cause that Dean had left the country some time before, and had never been heard of. But conceding that his life estate did pass, it is obvious that the fee of Mrs. Harris did not, and that the executory sale by her husband, with or without her consent in *pais*, would not divest her of her right, legal or equitable, nor create any specific enforcible equity in Dean.

McCANN
*vs*
EDWARDS.

Upon these facts several questions arise : First, If the legal estate for the life of Harris, or the joint lives of himself and wife, was in Dean, it may be well questioned whether the sale under execution, as to that interest, was regular or authorized by the statute. Secondly, If the sale of that interest was allowable, it is still more questionable whether the sale of a mere equity under a decree, is allowable by the statute. And thirdly, If an enforcible equity in fee, did not subsist in Dean at the time of the sale, it is clear none passed to McCann by his purchase. The statute provides that "after obtaining final decree for lands, slaves, money, or other specific thing, in any Court having chancery jurisdiction, the Clerk of said Court shall, upon the request of the party obtaining such decree, or his attorney, issue any writ which would be *appropriate* and is *allowable* upon a *judgment of a Court of law*, according to the nature of the case, for carrying the decree into effect; which writs shall issue in the same manner as other writs of execution, be returnable within the same time, executed by the Sheriff or other proper officer, under the like penalties, and in every thing partake of the *nature* and *effect* of like writs *issued upon judgments at law*, and subject to the same power of the Court. But nothing in this act contained shall prohibit any party from proceeding to carry any order or decree in chancery into execution, in any manner which he might have done if this clause or section had never been enacted."

Where a bill has been filed vs non-resident to set aside a conveyance as fraudulent, and subject property conveyed, to the satisfaction of a debt due by the non-resident, a *fi. fa.* is not the appropriate process to issue for the sale thereof, and a purchaser under such sale acquires no title.

The statute was intended, and can only be construed properly to apply to those decrees upon which an appropriate and set form of execution was allowable at law; as a *fi. fa.* against the estate generally, where there was a simple decree for money, a *habere facias possessionem*,

where the possession of land was decreed, and the appropriate writ on a judgment in detinue, where a specific article of personal property is decreed, and other writs known and recognized as appropriate on judgments at law. But the decree before us is a decree, not for money, land, the possession of land, or any article of property, but a decree for the annulment of fraudulent conveyances, and the sale of a certain tract of land, in satisfaction of the complainant's demands. We know of no execution at law which would be appropriate in such a case. Most certainly the common *fi. fa.* which was issued in this case, and commands the officer to make the debt out of the estate generally, is very inappropriate. It does not follow the decree, but goes beyond it in commanding the debts to be made out of the estate generally, when the decree only directs the debt and costs to be made out of a designated article of property. And it has been questioned, and may be well doubted whether in a proceeding against a non-resident, a decree in any case can authorize the sale of any article of property other than the specific article which gives jurisdiction to the Court. But if cases might occur in which a general decree for money might be rendered, which would authorize a sale of other property of the debtor in such a case, the decree in this case is not of that character.

A *fi. fa.* is not an appropriate process to carry into effect a decree directing the sale of an equity, and a purchaser under such sale acquires no such title as a vendee from him is bound to accept.

But, if regarding the foregoing statute as remedial, we should give such construction to it as to support the sale of a specific thing decreed to be sold, when made under a general execution, where the *legal title* was in the defendant, it is certainly still more questionable, whether under such an execution a mere *equity* in the defendant might be subjected to sale. The execution authorized by the statute, is in every thing to partake of the *nature* and *effect* of like writs issued on judgments. An execution at law has not the effect to authorize the sale or transfer of a mere equity or claim to a conveyance of land. But even if such force and effect should be given to the execution in the case before us, as to sustain the transfer of all interest in Dean, legal or equitable, if at the time of the decree and sale he had no legal title or enforcible equity in

the fee, surely no title, legal or equitable, could be passed by the sale and conveyance to McCann under the execution. If that which he had might be sold and transferred, that which he had not at the time, could not be. And as he held no claim upon Mrs. Harris or her husband, which could bind her or him to convey her fee, he held no interest in or to the land which could be sold or transferred under the execution. And by McCann's purchase he derived no title to or interest in the fee.

It is true, by a subsequent conveyance, made by Harris and wife to him, after the commencement of this suit, McCann has obtained the legal title to the land; but he obtained it with full notice of Dean's purchase from Harris, and upon no other consideration than the consideration paid by Dean. The deed is founded upon Dean's purchase, and is made to McCann upon his presumed acquisition of title under his purchase under the execution, and not only conveys to McCann, but confirms Dean's purchase. If Dean had not such interest at the time as could be sold under execution, the confirmation could not by relation, have the effect without the consent of Dean, to perfect McCann's title, or create in him an interest as derived by his purchase, which he did not acquire, and though the conveyance to him invests him with the naked legal title, he takes it subject to the claim or equity of Dean, of which he was not divested by the sale under execution. And though Dean, by his executory purchase from Harris, might not have been able to coerce from Mrs. Harris a conveyance of the fee, as she has joined her husband in the execution of a deed, duly acknowledged, confirming the purchase of Dean, and in consideration and fulfilment of the same, and of McCann's supposed acquisition thereof, and upon no other consideration, has conveyed to him, there can be no question that Dean, or his heirs, might assert his equity and compel McCann, or any other who acquired his legal title with notice of the equity, *to surrender the same to him or them, upon the terms, at any rate, of refunding the amount with interest,* that McCann had paid of his debt, in the purchase under execution.

LEXINGTON AND
HARRODSBURG
TURNPIKE Co.
*vs*
McMURTRY.

Upon the whole, therefore, we are satisfied that the decree of the Circuit Court was right, and must be affirmed.

*Harlan & Craddock* for appellant : *Morehead & Reed* for appellee.