## HEATON v. FRYBERGER.

I. PER DAY, J., MILLER, CH. J. AND BECK, J., CONCURRING.

1. **Conveyance:** AFTER-ACQUIRED TITLE. In order that a conveyance may so·operate as to pass an after-acquired title, *semble*, that it must be so executed as to have passed the grantor's estate at the time of its exe-·cution, had he then held the title.

2. **Husband and wife:** DEED OF MARRIED WOMAN. The deed of a *feme covert*, executed under the Revised Statutes of 1843, will have no validity or effect unless executed in strict conformity with the provisions of the statute.

3. ———: ———. If the name of the *feme covert* does not appear in the body of the conveyance but is signed to it, and the acknowledgment recites the execution by her of the deed and the relinquishment of her dower, such conveyance, nevertheless, does not operate to pass her estate.

4. ———: ———. An omission in the acknowledgment to state that she was made acquainted with the contents of such conveyance, is a fatal defect from which equity will not grant relief.

5. ———: ———. The authorities considered which treat of the power of a court of equity, to correct a mistake or omission in the execution of a deed by a married woman.

6. ———: STATUTE OF 1858. The statute of 1858, (Revison § 2257,) limits the authority of courts of equity to correct mistakes or omissions in conveyances by married women, to deeds executed after that time.

7. **Statute of limitations:** NON-RESIDENT. The statute of limitations will not run in favor of a non-resident, to bar an action for the recovery of real estate after ten years, notwithstanding the non-resident owner has always had a tenant in possession.

> *Argument 1.* The language of the statute is general, and an exception will not be inferred.

> *Argument 2.* The failure to incorporate the statute of 1843, which excepts real and possessory actions from the provision that the statute shall not run during absence from the territory, into subsequent legislation, is an evidence that such legislation was intended to have a different effect.

> *Argument 3.* In an action for the recovery of real property, plaintiff may recover damages for the detention. This is inconsistent with the theory that such an action, if not brought against the tenant of a non-resident owner, will be barred notwithstanding the non-residence.

### II. PER COLE, J., DISSENTING.

8. **Conveyance:** EXECUTION OF: DEED OF WIFE. Unless a deed by the wife is executed and acknowledged in the manner prescribed by statute, it will not convey her title or interest.

9. ———: EQUITY: HUSBAND AND WIFE. Equity cannot correct a mistake in the manner of the execution or acknowledgment of a deed by the wife. A failure to execute it as prescribed by law amounts to a failure to execute it all.

But within her power to contract, equity has the same power to enforce her contracts as those of any other person.

10. ———: ———: ———. If, in reducing her contract to writing or in drawing it up, there be a mistake, the power of a court of equity to correct the mistake is undoubted.

11. ———: ———: ———. A mistake in the body of the deed of a *feme covert*, when properly executed, may be corrected like that of any other person competent to convey.

12. **Practice:** APPEAL. The Supreme Court cannot review a question which, though it might properly be made upon the record, was not raised in the court below.

13. ———: ———. Where a deed was offered in evidence without objection, the sufficiency of its execution cannot be made the subject of objection on appeal.

## *Appeal from Muscatine District Court.*

### THURSDAY, APRIL 9.

ACTION OF RIGHT. The land in controversy was purchased of the United States, by Peter Fryberger, May 22, 1839. On the 29th day of April, 1853, by deed of general warranty, he conveyed the same to his daughter Rebecca Heaton, wife of Silas Heaton. Rebecca Heaton died in 1857, and Silas in 1869. Plaintiffs are the children of Rebecca and Silas Heaton, and claim the premises as heirs of their mother.

The defendant by way of equitable answer alleges that he purchased the premises from Rebecca and Silas Heaton in 1845, under a warranty deed; that his grantors derived their title by gift from Peter Fryberger, the father of said Rebecca; and that he has been in possession of the premises since 1845, making improvements and paying taxes, and that plaintiffs' cause of action is barred by the statute of limitations. Defendant prays that the title and right of possession be decreed to him.

In reply plaintiffs allege that defendant is not and never has been a resident of the State of Iowa, but that he is a resident

of the State of Ohio. Trial by the court. Judgment for plaintiffs for the possession of the premises, and $373.35, damages for detention.

Defendant appeals. The material facts are stated in the opinion. The cause was tried below by the first method of trying equitable issues, and is tried here *de novo.*

*Cloud & Broomhall*, for appellant.

*Richman & Carskadden*, for appellee.

DAY, J.—The defendant testified that Rebecca Heaton was his sister; that he purchased the land in controversy in 1844 or 1845, and paid therefor $100; that his father gave said land to Rebecca prior to his purchase thereof, and that the understanding was that he was to make them a deed; that the understanding was that he was to have the whole land, and a good title and warranty deed, and he 'always supposed he had such a deed until September, 1869, and that he knew of no reason why it was not such, unless it was by mistake made in the form in which it was executed; that he went into possession in 1845, and has paid the taxes ever since; that he had ten acres broken on said tract in 1845 or 1846, and had twenty-five acres more broken and fenced in 1855 or 1856; and that he has had crops off the land regularly every year since 1856; that plaintiffs' parents had full knowledge of his occupancy thereof, and his claim thereto, and they never asserted any claim to the ownership thereof.

The conveyance under which defendant claims is in the usual form of a warranty deed, and begins as follows: " This indenture, made this 17th day of April, in the year 1845, between Silas H. Heaton, of the county of Muscatine and Iowa Territory, of the first part, and Moses Fryberger, of the county of Muscatine, of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of one hundred dollars," &c. This deed is signed by Silas and Rebecca Heaton. The acknowledgment is in the following form:.

"TERRITORY OF IOWA, ⎱ ss.
  MUSCATINE COUNTY. ⎰        I, David Odell, justice of the
peace within and for said county, do hereby certify that this
day appeared before me Silas Heaton and Rebecca Heaton, to
me known to be the persons whose names are subscribed to
the' foregoing instrument as parties thereto, and acknowl-
edged the execution thereof to be their act and deed. And
the said Rebecca Heaton, wife of Silas Heaton, on examina-
tion separate and apart from her said husband, acknowledged
that she executed the same, and relinquished her dower in
the real estate mentioned, freely and without compulsion, or
undue influence of her said husband.

    Given under my hand," &c.

    It is not shown that, at the time of making this convey-
ance, the grantors had taken possession of the premises, or
made any improvements thereon. So far as appears from
1. CONVEY-    the evidence, a mere verbal gift of the lands had
ANCE: after-
acquired title. been made to Rebecca Heaton by her father, Peter
Fryberger. Rebecca therefore had no title to nor interest in
the lands which she could have enforced against her father,
if he had refused to execute a conveyance to her. Hence if
the deed to defendant can have any operation as against
Rebecca, it must be by way of estoppel, under the provisions
of section 3, chapter 54, of the Revised Statutes of 1843, then
in force, providing that "if any person shall convey any real
estate by a conveyance purporting to convey the same in fee
simple absolute, and shall not at the time of such conveyance
have the legal estate in such real estate, but shall afterward
acquire the same, the legal estate subsequently acquired shall
immediately pass to the grantee, and such conveyance shall
be as valid as if such legal estate had been in the grantor at
the time of the conveyance." But in order that a conveyance
may so operate to pass an after-acquired title, it must, we
apprehend, be so executed that it would have passed the
grantor's estate at the time of execution, if he had then had
the title.

    The law in force at the time this deed was executed con-
tains the following provisions respecting the conveyance by

Heaton v. Fryberger.

a married woman of her real estate: "A married woman may convey any of her real estate, by any conveyance thereof, executed by herself and husband, and acknowledged by such married woman, and certified in the manner hereinafter prescribed, by some court authorized by this act to take and certify such acknowledgment."

"No such acknowledgment shall be taken unless such married woman shall be personally known to at least one judge of the court taking the same, to be the person whose name is subscribed to such conveyance as a party thereto, or shall be proved to be such by at least one credible witness, nor unless such married woman shall be made acquainted with the contents of such conveyance, and shall acknowledge, on an examination apart from her husband, that she executed the same. freely, and without compulsion or undue influence of her husband."

"The certificate of such acknowledgment shall set forth that such married woman was personally known to at least one judge of the court granting the same to be the person whose name is subscribed to such conveyance as a party thereto, or was proved to be such by at least one witness, (whose name shall be inserted in the certificate,) and that she was made aquainted with the contents of such conveyance, and acknowledged, on an examination apart from her husband, that she executed the same freely, and without compulsion or undue influence of her husband." Revised Statutes of 1843, Chap. 54, §§ 24, 27, and 28.

At common law, a wife could convey her real estate only by uniting with her husband in levying a fine, which, being a 2. HUSBAND AND WIFE: conveyance by married woman. solemn proceeding of record, the judges were supposed to watch over and protect her rights, and ascertain by a private examination that her participation was voluntary.

The mode prescribed in the statute above set out, and which is generally adopted in this country, of alienating the property of a *feme covert* by a deed acknowledged apart from her husband, is a substitute for the common law fine, and is an enlargement of the power of alienation. But, in order that

her deed may be operative to any extent, and for any purpose, it is necessary that it shall conform fully with the statute. Independent of the statute she has no power to convey.

From an examination of the deed in question, it appears that the name of Rebecca Heaton nowhere appears in the body of the deed, although her name is signed to it; and further, that the acknowledgment omits to state *that she was made acquainted with the contents of such conveyance.*

The courts have uniformly held that either of these defects renders the deed void, and incapable of enforcement against the wife. We have not been able to find a single case which admits of the correction of such defects in a court of equity.

I. In *O'Ferrall v. Simplot*, 4 G. Greene, 162; s c. 4 Iowa, 381, an acknowledgment with the above omission was held to be fatally defective.

In *Silliman v. Cummins*, 13 Ohio, 116, in which the acknowledgment failed to state that the defendant, a married woman, was made acquainted with the contents of the deed, the court employed the following language:

"A married woman has no legal existence or power to transfer her interest in real estate except through the statutory channel. The mode of executing the conveyance confers upon her the power to convey. Where the power exists independent of its mode of execution, and has been defectively executed, it is not a case of want of power, but of defective execution, which a court of equity will aid. But where the power and mode of execution are inseparable, the power resulting from the mode, and that mode has not been pursued, it is not a case of defective execution, but a want of power which a court of equity cannot aid. Hence when a married woman attempts to convey, and lacks power from not pursuing the mode prescribed, courts of equity will not relieve, because to amend the mode is to create the power." And in this case it was held that the deed did not pass the estate of the wife, and that a court of equity could grant no relief. In *Grow v. Zumbro*, 14 Grattan, 501, Mary Zumbro and John Zumbro, her husband, deeded the land to the defendant in 1833. In 1850, John Zumbro died. Afterward Mary brought her action in

equity to recover the land. The cause was tried in 1856. The certificate of acknowledgment did not comply with the statute, in that it failed to state *that she did not wish to retract it.* The deed was held inoperative, and she was held entitled to recover the land.

To the same effect is *Watson v. Bailey,* 1 Binn. 470, in which it was held that the omission of the word *voluntary* in the acknowledgment of the wife, rendered the deed inoperative to pass the title to her lands, and that it is not admissible to prove her parol declaration that she executed the deed voluntarily, and if it was not sufficient, would execute and acknowledge it again, or do any act to make the deed good.

In *Dewey v. Campau,* 4 Michigan, 565, the court used this language: " The deed of a *feme covert* conveying her interest in lands which she owns in fee, does not pass her interest by the force of its execution and delivery as in the common case of a deed by a person under no legal disability. But the law presumes that a *feme covert* acts under the coercion of her husband, unless by a separate acknowledgment, out of the presence of her husband, before some officer duly authorized to take such acknowledgment. The deed of a *feme covert,* being void at common law, is a nullity unless acknowledged in strict compliance with the statute. The acknowledgment as to her is a part of the deed." To the same effect is *Pratt v. Battels,* 28 Vt. 685. *Russell v. Rumsey,* 35 Illinois, 362, was an action for the recovery of dower. The deed was both executed and acknowledged by the wife, but the certificate of acknowledgment failed to state that the wife relinquished her dower in the premises. In holding that her dower was not barred, the court employed the following language:

"It is urged that a widow claiming dower under such circumstances acts in bad faith. This may be true, but the law is not designed to regulate morals of indivduals who violate no law. Also, that she knew when she executed the deed that the purchaser expected to obtain a release of her dower, and that she must have designed to bar it by her act. The same might be said with equal truth, if she had only signed the deed and acknowledged it in the presence of a subscribing

witness; and yet it would not be contended that her dower would thereby have been released. Nor could witnesses be called to prove the fact. The statute has, in lieu of the more solemn mode of barring dower by fine or recovery, adopted the examination and certificate of the officer. When this change was made, it can hardly be supposed that any requirement imposed, would be regarded as merely formal and directory. In so great and important a change in the mode of barring dower, it would of course lead to the adoption of acts deemed sufficient, but to no more than was deemed essential. The wife is unable to bar her right of dower except by conforming to the requirements of the statute. Nor has equity jurisdiction to specifically execute the contract of a *feme covert*, whether for the relinquishment of her dower, or the conveyance of her real estate. If there has been a mistake by the officer, or the feme covert has acted in bad faith, it is the misfortune of the grantee to have received a deed inoperative to pass the dower. He is presumed to know the law, and when he received such a deed, it may as readily be inferred that it was with his assent, as that the wife designed to perpetrate a fraud. On the production of the officer's certificate, the presumption will be indulged that it contains a statement of all the acts that were done, and that none were omitted. It is for the grantee to be satisfied that the deed is properly acknowledged. If he neglects this duty, it is his fault as well as his misfortune."

In *Martin v. Dwelly*, 6 Wendell, page 9, the acknowledgment of the wife to a conveyance was defective. In this case Mr. Senator Beardsley said: "It is not pretended that the present conveyance is of any effect except as evidence of an agreement that a court of equity will enforce; and in this respect it is nugatory, because the law adjudges it to have been made at the instance of the husband. If chancery will enforce such an agreement, I can imagine no barrier that can be erected against the encroachments of the husband, or for the protection of the wife. It fritters away the statute and makes it a dead letter." See also *Lane v. Dolick*, 6 McLean., 200.

We are aware that an act of the Seventh General Assembly,

which took effect July 1858, purports to render valid all acknowledgements taken prior to that time, notwithstanding the provisions of the law in force at the time they were taken. Revision, § 2249.

However effectual this statute may be in its application to deeds which are operative as conveyances without acknowledgments, the acknowledgment being necessary only to admit the conveyance to record, and to constitute constructive notice of its execution, it can not render a deed valid, which was executed in such manner as to be void. This is clear upon principle, and it has been judicially determined.

In *Good v. Zercher*, 12 Ohio, 364, respecting this question the court held as follows: " Under our constitution the legislature has not power to enact laws that shall pass the land of a married woman by an instrument not binding upon her at the time of its execution. The act passed March 9th 1835 to render valid acknowledgments certified prior to that time, which omit to state that the deed was read, or contents made known to the wife, is unconstitutional, inoperative and void as to deeds executed by married women under the act of 1820, requiring such deed to be read or contents made known." The same point was ruled in *Russell v. Rumsey*, 35 Illinois, 362. The reasoning of these courts is equally applicable to our constitution.

2. The omission of the name of the wife in the body of the deed is equally fatal to it as a conveyance of her estate.

In *Sharp v. Bailey*, 14 Iowa, 387, it was held that a deed executed substantially in the form of the one under consideration, was ineffectual as a conveyance of the homestead, and the court said: " If the subject of the conveyance was her separate property, it seems to us that there could be no fair ground for claiming that she had parted with it by such a deed."

In *Davis v. Bartholomew*, 3 Ind., 485, the deed was as follows: " This indenture made the 3d of November, 1829, between Jeremiah Bartholomew and James Davis, of the first part," etc., * * * * *. And the said Bartholomew and Davis and their wives do, for their heirs, covenant, grant, and agree to and with the said Canada Fink, etc., that they, the said

party of the first part, are lawfully seized," etc.,      *      *      *.

"In witness whereof the said Bartholomew and Davis, and their wives have hereunto set their hands and seals, the day and year above written." Signed

   "JEREMIAH BARTHOLOMEW, REBECCA BARTHOLOMEW.
   JAMES DAVIS, MARY DAVIS."

The certificate of acknowledgment recited that the said Rebecca and Mary declared that they signed said deed without compulsion, and that they relinquished all their right and claim to dower. It was held that Mary Davis had not conveyed her dower, and that she was entitled to have it assigned to her. After determining that her name did not appear in the granting clause, and that it was used only in connection with the covenants in the deed, the court employed this language:

"The effect of this deed, therefore, is the same as if the complainant had not been mentioned at all in the body of it. Her signature and seal are to the deed, but they are not sufficient of themselves to bar her claim. *Cox et al. v. Wells*, 7 Blackford, 410. Nor is the complainant barred of her dower by the circumstance that the justice's certificate states that she acknowledged before him that she had voluntarily relinquished her right of dower. The deed itself must contain the words necessary to constitute a conveyance or release, or the claim of dower is not barred." Citing 4 Kent's Commentaries, 59. In *Carr v. Williams*, 10 Ohio, 305, it was held that a deed in the body of which the names of the grantors were not inserted, the blanks in the printed form not being filled, could not in equity be corrected against the wife.

In *McFarland v. Febiger's heirs*, 7 Ohio, 194, a deed as follows: "This indenture between S. McFarland and Catharine McFarland, his wife of the first part, and the Bank of the United States of the second part, witnesseth, that S. McFarland for and in consideration," etc., "hath sold," etc., running all through the operative parts as the single acts of S. McFarland, and concluding thus: "In witness whereof said Stephen and Catharine have hereunto set their hands and seals," signed

and duly acknowledged by both, was held inoperative as to the wife.

In *Cincinnati v. Newell's heirs*, 7 Ohio State, 37, it was held that, where the wife is owner in her own right of a portion of the premises conveyed, and joins her husband only in the *testatum* clause and in the execution of the deed, the husband's title alone passes.

In *Bruce v. Wood*, 1 Metcalf, 542, it was held that, where a husband by a deed in his own name only, conveys his wife's land in fee, and she merely affixes her signature and seal to the deed in token of her relinquishment of all her right in the bargained premises, her right in fee is not thereby conveyed, and after the decease of her husband, she may maintain a writ of entry, on her own seizin, to recover the land.

In *Callin v. Ware*, 9 Mass. 218, where to a conveyance of land by a husband the wife affixed her signature and seal, her name not being otherwise mentioned in the deed, it was held that she had not thereby barred her right of dower. In *Foster v. Dennison*, 9 Ohio, 121, it was held that a deed by a husband and wife, in which the wife is named only in the clauses relinquishing dower, though duly executed and acknowledged, operates only upon her dower, and will not pass any separate interest she may have in the estate. See also *Payne v. Parker*, Fairfield, 178. In *Purcell v. Goshorn*, 17 Ohio, 105, it was held that a *feme covert*, owner of the land in fee, does not pass her title by a deed executed by husband and wife, and that, though it was the intention of husband and wife to execute a deed conveying the fee, a court of equity will not, as against the wife correct the mistake in the instrument of conveyance, and compel the execution of a perfect deed. See also *Grapengether v. Fejervary*, 9 Iowa, 163–173.

We have found no adjudication in conflict with the general effect of these decisions.

They settle, so far as any question can be settled by precedent, both that the omission of the wife's name in the body of a deed, is fatal to it as a conveyance of her estate, and that equity will not correct the instrument, nor grant any relief, as against her.

In 1858, the following statute was enacted: "That the several courts of chancery in this State shall be authorized and empowered to correct, amend, and relieve against any errors, mistakes, or defects accruing in the deed or other convey-
6. ——— : stat-    ance of any husband and wife, hereafter to be
ute of 1858.    executed, and intended to convey or encumber the
lands or estate of the wife or her right of dower in the lands of her husband, in the same manner and to the same extent as the said courts are or shall be authorized or empowered to correct errors, mistakes, or defects in the deeds or conveyances of any person." Revision, § 2257.

This statute recognizes the existence, in this State, of the common law rule respecting the deed of a married woman, and expressly limits the power therein conferred to correct her conveyances, to those executed *after* its enactment.

The deed being insufficient to pass the estate of Rebecca Heaton, the lack of power to correct her conveyance must be conclusive against appellant, unless the plaintiff's cause of action is barred by the statute of limitations.

II. It appears from the evidence that the defendant has always been a non-resident of the State. Section 2745 of the
7. STATUTE OF    Revision of 1860, 1664 of the Code of 1851, is as
LIMITATIONS:
non-resident.    follows: "The time during which a defendant is a non-resident of the State shall not be included in computing any of the periods of limitation above described."

This statute seems so plain as not to require the aid of judicial construction.

We are referred, however, to section 3569 of the Revision, providing that an action for the recovery of real property "may be brought against any person acting as owner, landlord, or tenant of the property claimed." And it is urged that, as the defendant has always had a tenant in possession of the property, against whom an action might have been brought, the cause of action of plaintiffs is barred, notwithstanding the non-residence of defendant.

There are several objections to this view.

*First:* The language of the statute is general, applying alike to any case of non-residence. A case like the present is one

likely to occur very frequently; and if the legislature had intended that it should form an exception to section 3569, we are unable to see why they did not so expressly declare.

*Second:* The statute of limitations in force at the time this statute was enacted, chapter 94, Revised Statutes of 1843, section 8, excepts real and possessory actions from the provision that the statute shall not run during the time the defendant shall be out of the Territory. The failure to incorporate this provision into the subsequent statute is evidence of an intention that the subsequent legislation should have a different effect, and receive a different construction.

*Third:* In an action for the recovery of real property, the plaintiff may recover the damages occasioned by the detention. It is evident that in many cases full damages could not be recovered of the tenant, and that the plaintiff could obtain adequate relief only in an action against the person claiming the adverse title. Hence, although an action might be brought against the tenant, the plaintiff should not be compelled to do so in case the real defendant is a non-resident.

In *Wilson v. Appleton*, 17 Mass, 179, which was an action of assumpsit, the defendant pleaded the statute of limitations. The plaintiff replied that, at the time the cause of action accrued, he was, and ever since had been, beyond sea. The defendant rejoined that within six years after making the supposed promises, and ever since, the plaintiff had an agent within the commonwealth, authorized to demand and receive his supposed debt. To this rejoinder the plaintiff demurred. The court said: "As to the fact averred in the rejoinder, that the plaintiff had an agent in the commonwealth during his absence, this might be a reasonable exception to the saving, if the legislature had seen fit to introduce it. But such a case not being provided for, it is not for the court to legislate on the subject." See Angel on Limitations, §§ 204, 205 and 207. We are clearly of opinion that the defendants' continued non-residence prevents the operation of the statute in his favor. It follows that the judgment of the court below must be

AFFIRMED.

COLE, J., *dissenting.*—The original opinion of the majority, in this case, was based upon the points made by counsel in the cause; and it *held* that the court could not correct the error in the deed. The following dissenting opinion was prepared to file in connection with that original opinion. The point that the acknowledgment was defective was never made by counsel, either in the court below, or in this court. The concluding paragraph of this dissenting opinion, presents my views upon that question. There is no controversy respecting the real facts of the case. In this opinion some of the facts, omitted from the statement in the majority opinion, are stated fully. The facts are as follows: This is an action for the recovery of real property, the east half of the north east quarter of section thirty-four, township seventy-eight, range two west. The land was entered by Peter Fryberger, May 22, 1839, who gave the same, by parol to his daughter, Rebecca Heaton, wife of Silas Heaton, prior to 1845, but did not convey the same to her till April 29th, 1853. The defendant, who was a brother of Rebecca, purchased the land of Rebecca and Silas Heaton, and paid them therefor one hundred dollars, and at the same time they made to him a deed for it as follows: "This indenture made this 17th day of April, in the year 1845, between Silas H. Heaton, of the county of Muscatine and Iowa Territory of the first part and Moses Fryberger of the county of Muscatine of the second part, witnesseth: That the said party of the first part for and in consideration, etc., (being regular in form and with covenants of warranty, and concluding.) .In testimony whereof the said party of the first part *have* hereto set *their hands and seals* on the day and year first above written." This deed was duly signed and sealed by both Silas and Rebecca Heaton, and was also duly acknowledged by "the persons whose names are subscribed to the foregoing instrument as parties thereto," and was also recorded the next day. Rebecca Heaton died in 1857, and Silas H. died in 1869. Plaintiffs are their children, and claim the land as heirs of their mother.

The defendant, by answer, pleaded a general denial, and the statute of limitations, and for equitable defense set up a mistake in writing the deed whereby the name of Rebecca Heaton

was omitted from it. The testimony shows that the defendant was never a resident of Iowa, but always of Ohio; that he took possession as owner of the land directly after his purchase, began improvements thereon, and had occupied the same by his tenants by residence and cultivation of crops every year, and had paid taxes thereon up to the commencement of this action December 1, 1869, claiming title thereto; that plaintiff's ancestors lived near the land till they died, and never claimed any interest in it, but recognized it as defendant's. There was a trial to the court, without a jury, the equitable defense was dismissed and judgment rendered for plaintiffs for possession, and for $373.35 damages. The defendant appeals.

The testimony in the case is all before us, and from it there is scarcely room for any reasonable doubt that the defendant purchased and paid for the land in controversy, and that it was the purpose and intent of both of the plaintiffs' ancestors to convey the same fully and absolutely to him, and that the name of Rebecca Heaton was omitted from the deed by reason of a mistake. The single question, therefore, presented upon the equitable defense, is, whether a court of equity has the power to correct such a mistake in the deed of a married woman, made prior to the enactment of our statute, which declares that "a married woman may convey her interest in real estate in the same manner as other persons." (Revision, § 2215). There is no controversy between counsel, respecting the sufficiency of the execution and acknowledgment of the deed by the wife, or that it would have conveyed the absolute title, fully and completely, if the name of the wife had been inserted in the deed immediately before or after the name of the husband.

At the common law, the legal existence of the wife was so completely merged in the husband as that she could make no contract, nor could she bind herself or property by any obligation. Hence her conveyance of her own real estate was absolutely void—a nullity. Under the influences of a higher civilization, the power or authority to convey with certain limitations and guards has been conferred upon the wife, and enlarged from time to time. Primarily, she was empowered

to convey her real estate by a quasi judicial proceeding, called a fine and recovery. In the states of this country, as a general rule, she was, by statute, empowered to convey by joining her husband in a deed, and acknowledging separate and apart from him, its execution to be her free and voluntary act and deed. This was substantially the law in force here when the deed in controversy was executed, except that instead of joining her husband in a conveyance, it is provided that it shall be by deed "executed by herself and her husband." Rev. St. 1843, ch. 54, §§ 24, 27 and 28.

It has been held with great uniformity and upon the soundest reasoning, that unless the deed was executed and acknowl-

**8. CONVEY-ANCE: execution of: acknowledgment.** edged in the manner prescribed by statute, it did not convey her title or interest. *Silliman v. Cummins*, 13 Ohio, 116; *McCann v. Edwards*, 6 B. Mon., 208; *Lane v. Dolick*, 6 McLean, 200; *Davis v. Bartholomew*, 3 Ind., 485; *Grove v. Zumbro*, 14 Gratt, 501; *Watson v. Bailey*, 1 Binn., 470; *Pierce v. Wanett*, 6 Jones, (N. C.) 162; *Stone v. Montgomery*, 35 Miss., 83; *Delassus v. Poston*, 19 Mo., 425; *Dewey v. Campau*, 4 Mich., 565; *Pratt v. Battels*, 28 Vt., 685; *Russell v. Rumsey*, 35 Ills., 362; *Lane v. Soulard*, 15 Ills., 123; *O'Ferrall v. Simplot*, 4 G. 162; s c. 4 Iowa, 381. And with almost equal uniformity, and upon quite as cogent reasoning, it has been held that a failure to comply with the requirements of the statute, at least substantially, renders the deed inoperative as to the wife for any purpose, as well in equity as at law, and that it cannot be enforced as an agreement to convey, either as against her or her heirs. *Martin v. Dwelly*, 6 Wend., 9; *Wooden v. Morris*, 2 Green's Ch. 65; *Butler v. Buckingham*, 5 Day (Conn.) 492; *Lane v. McKeen*, 15 Maine, 304; *King v. Mosely*, 5 Ala., 610; *Knowles v. McCamly*, 10 Paige, Ch., 342. Where the wife had agreed to sell to one who took possession and then conveyed to another, the latter was required to convey to the former, and the note he gave to the wife in consideration for it was cancelled. *Warner v. Sickles*, Wright, (Ohio) 81; and, as respects the certificate of acknowledgment, it has been held, that if it was defective in form, it could not be corrected,

even upon parol proof that the acknowledgment was in fact according to the statute. *O'Ferrall v. Simplot*, 4 Iowa, 381, *supra*, and cases therecited; and, in other cases it has been held that the certificate of the officer, of the acknowledgment is conclusive evidence of the facts it states. *Baldwin v. Snowden*, 11 Ohio St., 203; and again that it is only conclusive against a *bona fide* grantee. *Louden v. Blythe*, 3 Casey, 22; and also that it is only *prima facie* true. *Fleming v. Potter*, 14 Ind., 486. And the deed of the wife is good if executed in the manner prescribed by statute, although no part of the consideration should go to her. *McFerrin v. White*, 6 Coldwell, 499; or, even if it is without consideration it passes her title. *Goundie v. Northampton Water Company*, 7 Barr, 233.

Unless the deed contains such words as are necessary to pass the estate of the wife, it will not operate to convey her title or interest, even though she join in its execution and acknowledgment. *McFarland v. Febiger*, 7 Ohio, 194; *Cincinnati v. Newell*, 7 Ohio St. 37; *Bruce v. Wood*, 1 Mich. 542; *Catlin v. Ware*, 9 Mass. 218. And if she joins in such deed which states that she relinquishes her right of dower, it will not affect her fee title therein. *Foster v. Dennison*, 9 Ohio, 126; or her homestead right, *Sharp v. Bailey*, 14 Iowa, 387. See also, *Mayo v. Feaster*, 2 McCord, Ch. 137; *Hughes v. Wilkinson*, 21 Ala. 296; *Payne v. Parker*, 1 Fairf., (10 Me.) 178.

And it has been a well settled rule under these statutes, that a mistake in the manner of the execution or acknowledging of deeds by the wife, cannot be corrected in equity. *Martin v. Dwelly*, 6 Wend. 9; *Butler v. Buckingham*, 5 Day, 492; *Grapengether v. Fejervary*, 9 Iowa, 163; *Carr v. Williams*, 10 Ohio, 305; *McFarland v. Febiger*, 7 Ohio, 194; *Wilkinson v. Getty*, 13 Iowa, 157. And this, for the plain reason that a mistake in the manner of executing or acknowledging a deed by a married woman, amounts to a failure to execute it at all. That is, unless she complies with the statute, she has not executed the deed, for she has no power or authority to execute it in any other way. A failure to

execute a deed by a married woman on account of non-compliance with the' requirements of the statute, whether such failure occur by mistake or otherwise, is, in its legal effect, just like the failure of any other person to execute a conveyance. Suppose an adult male make an agreement in parol to execute a deed for certain real estate, and he takes his pen and prepares the instrument, but by mistake or oversight he fails to sign it, that is, to execute it, could a court of equity correct this mistake of his, and create a conveyance which should bind him? Surely not; for he is not bound under his parol agreement, by reason of the statute of frauds, and he is not bound by his deed, for he has not executed it. And it makes no difference whether his failure to execute it was the result of a mistake or a purpose. Until he does execute it, he is not bound by it. And a court of equity possesses no power to make a contract for him under the 'pretext of correcting a mistake, any more than it would under the pretext of correcting his purpose. Until he makes or executes a contract, he is not and cannot be bound by it. When he has executed it, a court of equity possesses plenary power to correct any errors or mistakes occurring therein.

It is upon this principle that courts of equity have ever refused to interfere and correct very manifest mistakes in the execution of conveyances by married women. They have, in substance, said, that a failure to comply with the mode prescribed by statute for the execution of such instruments by married women, whether it resulted from mistake, oversight, or purpose, was, in legal effect, a failure to execute it; and the instrument, not being executed by her, did not bind her, and 'there is no power in a court of equity to execute the contract for. her, or to compel her to execute one. She has power to execute it in a particular way, and until she does so execute it she has not executed it at all, and is not bound by it. But when she does execute it in the manner pointed out by statute, she is as effectually bound by it as an adult male. 'And, if in reducing the contract to writing, or in drawing it up, there has been a mistake, a court of equity possesses just as plenary power to correct such mistake as it does to correct a mistake

in any other contract executed by any other person having power to execute it. All valid contracts, made by persons having power to make them, stand, in this respect, upon the same footing, and the power of a court of equity to correct mistakes in any of them rests upon the same basis.

If, in the case before us, the land had, by mistake, been described as the west half of the section, instead of the east half, the deed being otherwise complete, it seems to us there could be no reasonable doubt of either the power or the duty of a court of equity to correct the mistake. The right and duty of a court to correct the mistake in omitting the name of the wife from the body of the deed, rests upon the same principle. The effect of either mistake is precisely the same, to-wit: no title passes to the grantee. The right to correct either mistake rests upon the most solid reason; and the duty to do it rests upon the most unquestionable equity. *McCall v. McCall*, 3 Day, 402.

There are no cases which have fallen under our observation, that are in direct conflict with the foregoing views, unless it may be the case of *Purcell v. Goshorn*, 17 Ohio, 105, and the case of *Moulton v. Hurd*, 20 Ills. 137; and in this last case the fact of mistake was denied by sworn answer, and no evidence of it was before the court, so that the question was not properly presented; and besides this, the cases cited do not support the ruling. In the case of *McFarland v. Febiger*, 7 Ohio, 194, a suit in equity for dower, the wife, who was not owner of the fee, and whose name was not contained in the granting clause of the deed, nor was there any relinquishment of dower, joined her husband in its execution. In answer to interrogatories by the grantee she testified " that she was apprized before she executed the deed, that it was insufficient to deprive her of her dower, and that she executed it in this belief, and would not have executed it at all had she considered it as extinguishing her rights." The court held that the deed did not bar her dower. In a note to this case by the editor of a late edition, M. E. Curwen, Esq., it is said: " The profession, I believe, have not generally been disposed to put so favorable a construction on the complainant's case, here

reported, as the judge who pronounced the opinion of the court. It seems to them that the claim for dower was made under circumstances of great injustice; and after repeated efforts to break down the decision had failed, the legislature provided that a court of chancery might thereafter correct mistakes in deeds made by husband and wife, as well as in other deeds. The immediate occasion of this law was the decision of *Purcell v. Goshorn*, 17 Ohio, 105."

In the case referred to in the note, *Purcell v. Goshorn*, the court concludes its opinion with this sentence: " But all this, we think, does not prove that here is only a clerical mistake which needs to be rectified." And in the case of *Carr v. Williams*, 10 Ohio, 194, which was one of the efforts to break down the decision in *McFarland v. Febiger*, the court refused to correct the mistake on the ground that the mode prescribed by the statute for executing the conveyance had not been complied with, (p. 310). And while we regard that view of the case as quite too narrow, we confess that it puts the decision upon a very tenable basis.

The act of the Ohio legislature was passed April 17, 1857, and provided that the courts of the State " shall be authorized and empowered to correct, amend and relieve against any errors, defects or mistakes occurring in the deed or other conveyance of any husband and wife *heretofore or* hereafter to be executed, and intended to convey or incumber the lands or estate of the wife, or her right of dower in the lands of her husband, in the same manner and to the same extent as the said courts are or shall be authorized or empowered to correct errors, mistakes, or defects in the deeds of conveyance of any other persons." The act of the Iowa legislature became a law March 8, 1858, and is a literal copy of the Ohio act except the words " heretofore or," as above italicised, are omitted. Rev., § 2257.

After the enactment of the Ohio statute, the same case came before the Supreme Court of that State, see *Goshorn v. Purcell*, 11 Ohio St., 641, and the chief, and really the only point considered by the court, was, the constitutionality of the retrospective clause of the act. The court held it constitu-

Heaton v. Fryberger.

tional, and confirmed the rights of the grantee under the conveyance. This ruling was approved in *Miller v. Hine*, 13 Ohio St., 565, and was both approved and followed in *Smith v. Turpin*, 20· Ohio St., 478.    The effect of these decisions is to give to the courts power to correct a defective execution of a deed for real estate, when the parties "intended to convey" it; a power which the courts did not otherwise possess, and which, but for the peculiar provisions of the Ohio constitution, Art. 2, Sec. 28, the legislature might not be able to make retroactive.    But the general power to correct errors and mistakes in executed instruments· and the like was. not only originally inherent in courts of chancery, but the necessity for the judicial exercise of such power was among the leading causes which called such courts into being.    Whenever a person has authority to make a contract or conveyance, either generally or within prescribed limits, and it has been executed pursuant to authority, the inherent power of a court of equity is adequate to the correction of any mistake in it, without legislative aid.    But, since the legislature prescribes the mode and· manner, or the circumstances under which married women have authority to make contracts and conveyances, the power to correct errors and mistakes in the efforts to exercise the authority properly comes from the legislature. The district court, then, should have corrected the mistake in the deed, and. quieted the title in the defendant.

In this view, it becomes wholly unnecessary to notice the question made upon the statute of limitations.

It is a conceded fact, and indeed is expressly stated in the majority opinion, that the counsel on either side have not, . either in the court below or here, made any objection to the sufficiency of the acknowledgment of the deed by Mrs. Heaton, or of the officer's certificate thereof. In my opinion, therefore, that question is not properly before us for determination.    If to pass that question unnoticed, would lead to a grossly inequitable result, I might readily consent to an order for a re-argument, with a suggestion that the question of the sufficiency of the certificate of acknowledgment, had occurred to us, and probably might well deserve

10. PRACTICE: appeal.

and receive the attention of counsel.   But, in a case like this, where, by passing the question unnoticed, as counsel have done, a confessedly equitable and just result, in view of all the facts, could properly be reached, it seems to me to be a very great violation of equity, as well as of the rules of practice, to take notice of it.   By passing it unnoticed it will be remembered that the title of the land, would remain and be quieted in the defendant who purchased and paid for it in full in 1845, and who has been in the undisturbed possession of it, and has cultivated it by his tenants and paid taxes thereon as owner, each year, for the last twenty-five years.   Under such circumstances, for an appellate court to originate a purely technical question and one not made by counsel, for the purpose, or to the effect of depriving such purchaser, possessor and tax payer, of his land, is in my mind to do a wrong.

It seems also, to me, that if it is determined to originate here such technical question in an equity cause, and upon which counsel have made no point, at least the cause should be set down for re-argument, and a fair opportunity allowed for the discussion of the question.   This is especially so, under our rules requiring a printed abstract, since the omitted words may have been dropped for brevity or other cause, or, perhaps there is no defect, in fact, in the acknowledgment, and since no question was made upon it, no care or thought was taken as to the abstract of it.   But further than this, and upon the question of practice, it seems to me that this court has no rightful authority to originate the question, and that it could not now be made even by counsel.   The deed was offered in evidence by the defendant, and no objection thereto was made by the plaintiff. Having made none in the court below, none can be made here. The objection here raised by the court, goes to the sufficiency of the execution of the deed, and by every rule of practice, that objection must be made when the instrument is offered in evidence.   If not made then, it cannot afterwards be made even in the same court.   The legal effect of the deed may afterwards be considered, but its execution cannot be questioned; and this objection here raised goes only to the sufficiency of the execution of the deed by the wife.   Hence this

objection was waived, and cannot be raised here, even by counsel. And, finally, this court has repeatedly in direct and express language *held*, that it will not consider *questions* which are *not raised in the court below*. We refer to some of the cases: *Couch & Kinsman v. Barton*, Morris, 354; *The Western Stage Co. v. Walker*, 2 Iowa, 504; *McGregor, Laws & Blackmore v. Armill*, Ib. 30; *The State v. Groome*, 10 Iowa, 308; *Pigman v. Denney et al.*, 12 Iowa 396; *McKinley v. Betchtel et al.*, Ib. 561; *Bevan v. Hayden, sheriff*, 13 Iowa, 122; *Morgan v. Webster County*, 15 Iowa, 595; *Starry v. Starry*, 21 Iowa 256, an equity cause and quite in point; *Finley v. Brown*, 22 Iowa, 538; *McNaught v. The C. & N. W. R'y Co.*, 30 Iowa, 336; *Elder v. Littler, adm'r*, 15 Iowa, 65; See also, *Lattourett v. Cook*, 1 Iowa, 1, and cases cited in note *h* in Cole's edition. And it has also been often *held* by this court that questions relied upon to reverse a case must not only be *presented in the brief*, but they must also *be argued by counsel*, or they *will not be noticed*. *Shaw v. Brown*, 13 Iowa, 508, (*i. e.*) 515; *The County of Dubuque v. Koch*, 17 Iowa, 229; *Clise v. Freeborn*, 29 Iowa, 110, expressly in point; *Bodwell v. Bragg & Bro.*, Ib. 232; *Snyder v. Eldridge et al.*, 31 Iowa, 129, and other cases.

For these reasons I think it is wrong in equity and in law, to originate the technical question and decide the case upon it. Upon the other ground the judgment should be reversed, and justice thereby done; but the majority say it must be

AFFIRMED.